UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GENERAL CAPACITOR | Case No. 16-cv-02458-HSG <br><br> **ORDER DENYING DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND ENTERING SUMMARY JUDGMENT FOR PLAINTIFFS IN PART** <br><br> Re: Dkt. Nos. 139, 140, 141 |

On September 26, 2016, Plaintiffs Enertrode Inc. ("ETI") and Linda Zhong filed a second amended complaint against Defendants General Capacitor Co. Limited ("GC LTD"), General Capacitor International Inc. ("GC ITL"), General Capacitor LLC ("GC LLC")[1], Jianping Zheng, and Wanjun Cao (collectively, "Defendants") asserting claims for breach of contract, inducing breach of contract, misappropriation of trade secrets, and declaratory relief. Dkt. No. 116 ("SAC"); *see also* Dkt. No. 1-1. Currently pending before the Court are Defendants' motions for partial summary judgment. *See* Dkt. Nos. 139 ("GC Mot."), 140 ("Zheng Mot."), 141 ("Cao Mot."). Briefing on the motions is complete. *See* Dkt. Nos. 144 ("Opp. to GC"), 152 ("GC Reply"), 146 ("Opp. to Zheng"), 148 ("Zheng Reply"), 145 ("Opp. to Cao"), 147 ("Cao Reply"). On March 1, 2018, the Court heard argument on the motions. After carefully considering the parties' arguments, the Court **DENIES** Defendants' motions. In addition, the Court **GRANTS** summary judgment for Plaintiffs on the GC Defendants' claims under the Computer Fraud and Abuse Act ("CFAA").

---

[1] For purposes of this order, Defendants GC LTD, GC ITL and GC LLC are collectively referred to as "GC Defendants."

## I. BACKGROUND

Here, even the basic facts are subject to dispute. In this section, the Court notes these disputes and sets forth any agreed upon facts. As necessary, the Court discusses further factual details in the course of its analysis.

### A. The Technology License and Service Agreement

On May 1, 2014, ETI entered into a contract with GC LTD and GC ITL (collectively, "GC") entitled the Technology License and Service Agreement. *See* Dkt. No. 144-2 ("Zheng 6/2/2017 Dep."), Ex 5 ("TLSA").[2] ETI is solely owned by Zhong, and is in the business of designing and creating electrodes for multiple applications. SAC ¶¶ 11, 12. GC LTD is a Hong Kong corporation. *Id.* ¶ 3. GC ITL is a Delaware corporation that is owned by GC LTD. *Id.* ¶ 5. From 2014 through 2016, Zheng was the chairman of the board of directors of GC LTD. Dkt. No. 142-3 ("Zheng 1/18/2018 Decl.") ¶ 2.

Pursuant to the TLSA, ETI agreed to sell and grant GC a nonexclusive license to use ETI's electrode technology ("the Technology") solely for use in its Li-ion Capacitors. TLSA at 1; *see* SAC ¶ 13. Under this arrangement, ETI agreed to design, procure equipment for, and set up an Electrode Manufacture Line to fabricate the electrodes for GC. TLSA at 1.

The TLSA grants GC the right to sell electrodes made using the Technology only to GC's licensees "and/or to GC's Joint Venture." *See* Dkt. No. 81-2 at 1; Dkt No. 1-1 at 2.1, 2.3. "[T]he License [did] not include the right to sub-license to any third parties." Dkt. No. 1-1 at 2.1. The TLSA also states that "[a]ll inventions or discoveries that relate to the Technology or its use that are conceived, developed, or reduced to practice jointly by ETI and GC, and all patents, trade secrets, trademark, copyrights, and other intellectual property rights therein and appurtenant thereto ('the Technology Joint Inventions') shall be owned by ETI." TLSA at 4-5; SAC ¶ 14.

### B. Linda Zhong's Employment with GC

On January 7, 2015, GC ITL hired Zhong as GC ITL's Chief Executive Officer and GC LTD's Chief Technology Officer to help run the Electrode Manufacture Line. *See* Dkt. No. 144-4

---

[2] Defendants claim that GC LLC, as a wholly-owned subsidiary of GC LTD, was also a party to the TLSA. *See, e.g.*, GC Mot. at 6.

("Zhao 8/21/2017 Dep."), 38:8-25; Dkt. No. 142-1, Ex. C ("Zhong 4/14/2017 Dep." Ex. 13); SAC ¶ 16. In addition to the parties' employment agreement, the parties executed a supplemental agreement setting forth additional terms of Zhong's employment. Dkt. No. 133 ("Am. Answer") ¶ 16; *see* Zhong 4/14/2017 Dep., Ex. 14. The supplemental agreement states in part that "during the time period when . . . Zhong is hired by General Capacitor, any additional intellectual property including the patents and copyrights which relate to electrode technology or manufacture for ultracapacitors. . . [would] belong to ETI." *See id.*; SAC ¶ 16.

Zhong claims that she began her employment with GC under the impression that GC LLC was a wholly-owned subsidiary of GC LTD. Dkt. No. 144-16 ("Zhong Decl.") at ¶¶ 10-11.[3] Zhong alleges that she later became unsure about GC LLC's subsidiary status. *See id.* She asked George Moye, GC Defendants' corporate counsel, whether GC LTD owned GC LLC. *See* Dkt. No. 144-18; Dkt. No. 144-2 ("Moye 6/21/2017 Dep."), Ex. 39. According to Zhong, she learned that GC LLC was not owned by GC LTD, and took steps to treat the entities separately. *See id.* Defendants maintain that GC LLC is and has always been a wholly-owned subsidiary of GC LTD. *See, e.g.*, GC Mot. at 6. According to Defendants, Zhong authorized GC LLC's use of the Technology "because she thought GC LLC was owned by GC Ltd and was a GC Ltd subsidiary." *Id.* at 8.

### C. Zhong's Li-Foil Idea and Patent Application and GC's Patent Application

Zhong states that testing revealed that GC's methods of attaching lithium to the negative electrode ("lithium powder" or "SLMP") for use in its Li-ion capacitors did not work. Zhong Decl. ¶ 13. Zhong claims that in July 2015 she researched and came up with the idea of using multiple pieces of lithium foil in place of lithium powder to press on the negative electrode. Opp. to GC ¶ 12; *see* Dkt. No. 144-2 ("Zheng 6/2/2017 Dep.") at 196:1-24; Zhao 8/21/2017 Dep., 135:15-18, Ex. 60 at 1. Zhong allegedly told Zheng, Cao, and Wendy Zhao, the director of and majority shareholder in GC, about the li-foil invention, and the parties dispute whether those

---

[3] Defendants object to Plaintiffs' translation of documents in paragraphs "7, 17 a., b., c., and d., and 21 of the Zhong Declaration, and the purported English translations in Exhibits 1, 5, 6, 7, 8 and 9 referenced therein." Zheng Reply at 14. The Court has not relied on these translations for summary judgment purposes.

disclosures were made in confidence. *See* Opp. to GC at 3, 9-10, 17-19; Zhao 8/21/2017 Dep., 135:15-18, Ex. 60 at 1; Dkt. No. 144-6 ("Zheng 9/29/2017 Dep."), Ex. 13; Dkt. No. 144-7 ("Cao 6/20/2017 Dep."), 106:3-108:3, 111:6-9.

On August 25, 2015, Zhong filed a non-provisional patent application regarding the li-foil idea. Zhong Decl. ¶ 15; Opp. to GC at 7. The patent application claimed: "[A] method of fabricating an electrode in which: a) Lithium foil is used as the lithium layer pressed onto the active layer of the negative electrode. . . ." Opp. to GC at 7. In September and October of 2015, Zhong disclosed the li-foil idea to GC's joint venture, China Aviation Lithium Battery ("China Aviation"). GC Mot. at 11 ¶ 27, Opp. to GC at 9 ¶¶ 37-42.

On October 30, 2015, GC LLC filed a non-provisional patent application that included pieces of lithium foil as a lithium source. *See* Zheng 9/29/2017 Dep., Ex. 13; Cao 6/20/2017 Dep., 106:3-108:3. Defendant Zheng directed Cao to prepare the application and to include pieces of lithium foil as a lithium source. *See id.* Defendants claim that the lithium foil research included in the patent application was based on Cao's independent work product, his collaborations with others, and on knowledge that was generally available in the industry. GC Mot. at 12 ¶ 29; Cao Mot. at 17. Zhong disputes this. *See* Opp. to GC at 20.

### D. Zhong's Termination and GC Data Files

In a letter dated February 25, 2016, Zhong was informed that her employment would be terminated effective February 29, 2016. Dkt. No. 142-2 ("Moye Decl.") ¶ 9. According to Defendants, a folder titled "Dropbox" was deleted from Zhong's computer on February 18, 2016. Dkt. No. 142-6 ("Ayala Decl.") ¶¶ 5, 7, Ex. A-2. That folder apparently contained 577 files and 50 folders with GC's data. *Id.* Zhong does not recall deleting the local Dropbox folder from her GC computer. Zhong Decl. ¶ 29.

Upon terminating Zhong's employment, GC LTD claims that it "demanded Zhong promptly return the GC Companies' data, property and passwords and administrator rights, as required by law and the company's Bylaws and Employee Handbook." GC Mot. at 15 ¶ 39; Moye Decl. ¶¶ 8-11. GC Defendants assert that Zhong failed to return any of the GC data files residing on electronic storage devices and accounts, relevant passwords and administrator rights in her

4

possession. *See* Moye Decl. ¶ 11. GC Defendants claim that Zhong also failed to return four USB devices that Zhong regularly connected to her GC Computer. *See id.*; GC Mot. at 15 ¶ 42; Dkt. No. 144-12 ¶ 11; Ayala Decl. ¶ 6, Ex. A-3, Ex. 6; Moye Decl. ¶ 11.

On March 16, 2016 Kathleen Qiu, Zhong's daughter, informed GC Defendants that she would be resigning from her position. Dkt. No. 144-29 ("Qiu Decl.") ¶ 5. Shortly thereafter she restored her GC-issued laptop computer as instructed by Cao. *Id.* This process allegedly removed all of Qiu's GC user files and wiped all the activity performed by Qiu on the computer during her employment at GC. Ayala Decl., Ex. A-2 ¶ 33. On the same day, a user logged into Zhong's computer and attempted to restore the system to factory setting, but the restore failed to complete. GC Mot. at 16 ¶ 68; Ayala Decl. ¶ 5 & Ex. A-2 ¶¶ 25, 37. Moye claimed that he saw Qiu enter Zhong's office that day. Moye Decl. ¶ 14. Plaintiffs dispute that Qiu accessed Zhong's GC office desktop computer that day. Qiu Decl. ¶ 4.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the

5

nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

## III. DISCUSSION

All Defendants move for summary judgment on Plaintiffs' claim for misappropriation of trade secrets. *See* GC Mot. at 2, Zheng Mot. at 2, Cao Mot. at 15. GC Defendants and Zheng move for summary judgment on Plaintiffs' claims for breach of contract and for inducing breach of contract. *See* GC Mot. at 1-2, Zheng Mot. at 1. GC Defendants also move for summary judgment on their claims against Plaintiffs under the CFAA, 18 U.S.C. §1030. *See* GC Mot. at 23; Dkt. Nos. 91, 88.

### A. Plaintiffs' Trade Secret Misappropriation Claim

Defendants argue that Plaintiffs cannot prove the two elements required to show trade secret misappropriation under the California Uniform Trade Secrets Act ("CUTSA"): (1) the existence of a trade secret, and (2) misappropriation of the trade secret. *See* GC Mot. at 20-21;

6

1    Zheng Mot. at 18-19; Cao Mot. at 15-16; *Altavion, Inc. v. Konica Minolta Sys. Lab. Inc.*, 226 Cal.

2    App. 4th 26, 48 (2014); CA Civ. Code § 3426.1. In the SAC, Plaintiffs allege that ETI and/or

3    Zhong owned a trade secret in Zhong's li-foil idea. SAC ¶ 33 ("Plaintiffs allege that ETI [or] …

4    in the alternative, Zhong was the owner and/or licensee … of certain trade secret information …

5    related to a novel method for fabricating lithium electrodes, the Lithium Electrode Invention.").

6    Plaintiffs further claim that Defendants misappropriated the trade secret by "acquiring the

7    information by improper means, by using the information in direct competition with Plaintiff[s],

8    and by disclosing the information to third parties." *Id.* ¶ 37. Plaintiffs set forth sufficient evidence

9    as to each of these allegations to create a genuine dispute of material fact that precludes summary

10   judgment.

### i. The Existence of a Trade Secret

In order to establish the existence of a trade secret, Zhong must show that the li-foil idea "derives independent value, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d). Whether a party claiming a trade secret undertook reasonable efforts to maintain secrecy is a question of fact. *In re Providian Credit Card Cases*, 96 Cal. App. 4th 292, 306 (2002); *see also Mattel, Inc. v. MGA Ent*., Inc., 782 F. Supp. 2d 911, 1046 (C.D. Cal. 2011) (finding that the issue of reasonable secrecy under the circumstances was "for the fact-finder to resolve," since the disclosure "could have been accompanied by an 'implied obligation to not use or disclose it' for a specified period of time" (quoting *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 475 (1974)).

The parties disagree on the facts underlying li-foil's independent value and Zhong's efforts to maintain secrecy. *See* GC Mot. at 21, Zheng Mot. at 18-19, Cao Mot. at 15-17. Plaintiffs assert that Zhong's disclosure to China Aviation was made in confidence and thus falls under the "confidential relationship" exception. Opp. to GC at 9-10, 17-19. The facts set forth by Plaintiffs are sufficient at this stage to create a genuine dispute that a jury should decide. *See id.*; Zheng 6/2/2017 Dep. at 196:1-24 (suggesting that Zhong first mentioned the li-foil idea); Zheng 9/29/2017 Dep. at 23:6-13 (Zheng indicating that he "instruct[ed]" Zhong in her presentation to China Aviation ); Dkt. No. 142-4 ("Cao Decl."), Ex. 1 (GC's Power Point presentation sent to

China Aviation marked "confidential"); Zhong Decl. 14 (Zhong stating that her disclosure to China Aviation was confidential). [4] *See also Direct Technologies, LLC v. Electronic Arts, Inc.*, 836 F. 3d 1059, 1070 (9th Cir. 2016) ("'[C]ourts will consider the factual circumstances of each case on an individual basis, to determine whether a confidential relationship may reasonably be implied' such that an entity has the duty to maintain the secrecy of confidential information." (quoting *Pachmayr Gun Works, Inc. v. Olin Mathieson Chem. Corp.*, 502 F.2d 802 (9th Cir. 1974)).[5]

### ii. Trade Secret Misappropriation

Defendants argue that Plaintiffs cannot show trade secret misappropriation: specifically, that GC "disclosed or used [the li-foil idea] without consent, and at the time of disclosure or use, knew or had reason to know that [its] knowledge of the trade secret was … acquired under circumstances giving rise to a duty to maintain its secrecy. . . ." § 3426.1(b)(2)(B)(ii). The Court disagrees. There are triable factual issues regarding whether Defendants knew or had reason to know that they had a duty to maintain secrecy of the li-foil idea as of July 26, 2015. *See* Zhao 8/21/2017 Dep., 135:15-18, Ex. 60 at 1 (Zhao informing Zheng in an email dated July 26, 2015 that Zhong planned to file a patent on the new lithium doping technology, and Zheng's response); Zheng 9/29/2017 Dep., Ex. 13; Cao 6/20/2017 Dep., 106:3-108:3 (acknowledging that Zheng directed Cao to file the non-provisional patent application), 111:6-9 (admitting that Zhong was "the first person to suggest that you use multiple pieces of lithium foil on the negative

---

[4] Defendants object to Zhong's statement as improper because it "makes a legal conclusion that the disclosure was made under the TLSA." *See* Zheng Reply at 14; Cao Reply 9-10. The Court relies on Zhong's statement only to the extent that it reflects her belief in the confidentiality of the disclosure to show that she took reasonable steps to maintain secrecy.

[5] Plaintiffs claim that Defendants belatedly produced the joint venture agreement between GC and China Aviation, which Defendants designated "Confidential - Attorneys' Eyes Only." *See* GC Opp. at 25. Plaintiffs accordingly request that the Court either deny Defendants' motions outright or provide Plaintiffs with additional time to "contest the AEO designation, file a motion to seal, and to oppose the motions." *Id.* At oral argument, the Court advised the parties to file a motion to seal if one was required pursuant to the parties' protective order. Neither party did so. The Court accordingly **DENIES AS MOOT** Plaintiffs' request. Similarly, Plaintiffs lodged several evidentiary objections in their opposition to Defendant Cao's motion for summary judgment. *See* Cao Opp. 16-18. In reaching its disposition, the Court did not rely on those portions of the declarations and their supporting exhibits that Plaintiffs identified as improper or improperly disclosed.

electrodes"). Plaintiffs' misappropriation claim therefore survives at this stage.

B. **Plaintiffs' Breach of Contract Claim**

GC Defendants and Zheng argue that summary judgment is appropriate as to Plaintiffs' claim for breach of contract. Plaintiffs assert that GC breached the TLSA in at least two ways, including by: (1) using the Technology beyond the scope of the license; and (2) improperly sub-licensing the Technology to GC LLC. SAC ¶ 24. Plaintiffs claim that GC LLC is not a wholly-owned subsidiary of GC LTD, and thus was not permitted to make use of ETI's Technology. *See* Opp. to GC at 15. According to the GC Defendants and Zheng, it is beyond dispute that GC LTD owns GC LLC. Alternatively, even if GC LTD does not own GC LLC, GC Defendants and Zheng claim that Zhong waived her right to challenge GC LLC's use of the Technology because she initially authorized that use. GC Reply at 4. In response, Zhong claims that she only granted GC LLC permission because she relied on Zheng's statement that GC LLC was a subsidiary of GC LTD. Opp. to GC at 14-15.

Genuine disputes of material fact preclude summary judgment. GC Defendants and Zheng rely for their ownership argument on a stock proxy agreement, through which Zheng and Harry Chen, owners of GC LLC, transferred certain interests in GC LLC to GC LTD. *See* GC Mot. at 5 ¶ 1; Zheng 9/29/17 Dep. at 99:17, 106:15; Dkt. No. 151-2 ("Chen Decl."), Ex. 2 ("Proxy Agreement").[6] According to that agreement, executed November 26, 2014, GC LTD was to become a shareholder of GC LLC, while Zheng and Chen retained nominal ownership of that entity. Proxy Agreement ¶ 3. Despite the existence of this agreement, Plaintiffs present evidence that creates a genuine dispute as to whether GC LLC was, in fact, a wholly-owned and operated

---

[6] Defendants did not file an English translation of the agreement (which was originally in Chinese) along with their motion; instead, as acknowledged at oral argument, Defendants filed the English translation with a collective declaration in support of their reply briefs. *See* Dkt. No. 151. The translated document is titled Stock Proxy Agreement Supplemental Agreement. In their February 14, 2018 filing, Dkt. No. 153, Plaintiffs objected to this exhibit on grounds that it was improperly authenticated (because the translator lacked personal knowledge), and violated the parties' protective order. Plaintiffs, however, fail to cite any support for their authentication objection. In addition, as set forth in footnote five, neither party filed a motion to seal the proxy agreement after being advised that they could do so. Even considering the agreement, however, disputes of fact regarding actual ownership preclude summary judgment in GC Defendants' and Zheng's favor.

9

subsidiary of GC LTD. For instance, GC Defendants' corporate counsel confirmed Zhong's understanding that GC LLC was "a separate and different company" from GC ITL. Dkt. No. 144-18 (Zhong explaining her understanding of GC LLC's status); *see* Dkt. No. 144-3 ("Moye 6/21/2017 Dep."), Ex. 39 (email from Moye to Zhong confirming Zhong's understanding of GC LLC's ownership status); Zhong Decl. ¶¶ 10-11. GC's corporate counsel also admitted in his deposition that GC LLC is "not a wholly-owned subsidiary of GC Limited." Moye 6/21/2017 Dep. at 88:24-89:15, 40:8-9 ("Q: Who owns General Capacitor, LLC? A. Jim Zheng proxy holds it on behalf of GC LTD."). Though by no means dispositive, Plaintiffs' evidence is sufficient at this stage to create a genuine dispute of fact that prohibits summary judgment.

GC Defendants' waiver argument likewise fails. A party waives a known right when it *intentionally* relinquishes that right after full knowledge of the facts. *Granite States, Ins. Co. v. Smart Modular Techs.*, 76 F.3d 1023, 1028 (9th Cir. 1996). Determining whether Zhong had the requisite intent for waiver turns on Zhong's purported beliefs when she authorized GC LLC's use of the Technology. To the extent the GC Defendants present evidence to counter Zhong's claims, that evidence shows simply that a genuine factual dispute exists on this issue. *See, e.g.*, GC Reply at 4.

### C. Plaintiffs' Claim for Inducement of Breach of Contract

GC Defendants and Zheng also move for summary judgment on Plaintiffs' inducement of breach of contract claim. According to GC Defendants, Plaintiffs' inducement theory is legally untenable because, in short, it rests on "an unsupportable argument that GC Ltd induced a breach of its own contract." *See* GC Mot. at 19-20. Separately, Zheng relies on the "manager's privilege" to claim that he cannot be liable for inducing a breach of contract if the Court finds that such a breach occurred. *See* Zheng Mot. at 16-18.

To assert a claim for inducing a breach of contract, Plaintiffs must show: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co*. 50 Cal. 3d 1118, 1126 (1990). Here,

10

there are material disputes underlying elements three and four; the issues of intent and actual breach depend on whether GC LLC is, in fact, a wholly-owned subsidiary of GC LTD. *See* Moye 6/21/2017, 88:24-89:15, 40:8-9, & Dep. Ex. 39; Zhong Decl. ¶¶ 10-11; Zheng 9/29/17 Dep. at 99:17, 106:15; Proxy Agreement. These factual disagreements render summary judgment inappropriate.

Zheng's assertion of the manager's privilege also fails. An advisor can forfeit the protections of the manager's privilege if the advisor acts with improper intent. *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 326 (9th Cir. 1982). However, "where. . . an advisor is motivated in part by a desire to benefit his principal, his conduct in inducing a breach of contract should be privileged." *Id.* at 328. "The goal of the privilege is promoted by protecting advice that is motivated, even in part, by a good faith intent to benefit the principal's interest." *Id.* Zheng bears the burden to show that the privilege exists, and that inquiry is "thoroughly fact intensive." *Calero v. Unisys Corp.*, 271 F. Supp. 2d 1172, 1180 (N.D. Cal. 2003) (citing *Aalgaard v. Merchants National Bank, Inc.,* 224 Cal. App. 3d 674, 683 (1990)).

Even under the "mixed motive" test, material disputes of fact preclude summary judgment. Neither party has submitted evidence that, at this stage, allows the Court to determine which personal and/or corporate interests Zheng served at the time of the alleged breach: his own interests or the interests of GC LLC, GC LTD, and/or GC ITL. *See* Zheng Opp. at 15; Zheng Reply at 6-7. Here too, Zheng relies for evidence of his proper motive on disputed facts regarding his purely nominal ownership of GC LLC. Zheng Reply at 6-7; *see* Zheng 1/18/2018 Decl. ¶ 2 ("At all times while a director of GC Ltd, and manager, I acted in what I thought and understood to be the best interests of the GC Companies."); Zheng Mot. at 6, ¶ 2. For the reasons discussed, the Court cannot resolve on summary judgment factual disputes governing GC LLC's subsidiary status, which in the context of this claim, are further complicated by Zheng's status as manager of all three GC entities. *See* Zheng Opp. at 15.

### D. GC Defendants' CFAA Claim

GC Defendants move for summary judgment on their claims against Zhong and ETI under the CFAA. *See* GC Mot. at 23. GC Defendants contend that the undisputed evidence shows that

11

Zhong violated the CFAA "when she took GC data files and emails and destroyed her employers' computer records . . . after learning she would be fired and keeping GC data to date." *Id.* According to GC Defendants, these actions exceeded the scope of Zhong's authorized use of GC's computers "contrary to GC Inc. policy." *Id.* at 23, 25.

Binding case law contravenes GC Defendants' claim. In *United States v. Nosal*, the Ninth Circuit established that the CFAA punishes "the unauthorized procurement or alteration of information, not its misuse or misappropriation." 676 F.3d 854, 863 (9th Cir. 2012). The court reasoned that Congress intended the criminal statute to apply to hackers, as opposed to "[e]mployer-employee and company-consumer relationships traditionally governed by tort and contract law." *See id.* at 860, 862-63; *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) ("Brekka's use of LVRC's computers to email documents to his own personal computer did not violate § 1030(a)(2) or § 1030(a)(4) because Brekka was authorized to access the LVRC computers during his employment with LVRC."). The CFAA thus does not govern "violations of corporate computer use restrictions or violations of a duty of loyalty." *Nosal*, 676 F.3d at 862. Rather, to state a cognizable CFAA claim, there must be evidence that Zhong accessed the GC files "without authorization"—for instance, by hacking into the system after her employment ceased.

GC Defendants fail to present any evidence to support a cognizable CFAA claim. Zhong's alleged deletion of GC data files occurred on February 17, 2016, *during* Zhong's employment with GC. *See* GC Mot. at 15. GC Defendants do not dispute that Zhong was authorized to access these files at this time. Rather, GC Defendants argue only that Zhong did not have authority to *delete* the GC data. GC Reply at 8. Even if GC Defendants are correct as a factual matter, Zhong's alleged conduct does not fall within the CFAA's scope.

That same reasoning applies to GC Defendants' claim that Zhong improperly retained GC data files on "electronic storage devices and accounts" and "emails automatically forwarded to her personal email account." GC Mot. at 24 ("*While employed by the General Capacitor companies*, Zhong had her GC Company emails automatically forwarded to her personal email account.") (emphasis added). That claim again relates to whether Zhong exceeded the scope of her

12

employment by possessing or obtaining company files beyond her authority—conduct to which the CFAA does not pertain. *See id.*; *Nosal* 676 F.3d at 862-863. So too with GC Defendants' assertion that Zhong violated the CFAA by using her daughter, Kathleen Qiu, to delete GC computer files. *See* GC Mot. at 24-25. It is undisputed that Qiu was employed by GC at the time of the alleged deletion and had authority to access the company databases. *See* 676 F.3d at 863 ("Because Nosal's accomplices had permission to access the company database and obtain the information contained within, the government's charges fail to meet the element of 'without authorization, or exceeds authorized access under 18 U.S.C. § 1030(a)(4).'").

At oral argument, the Court raised the issue of *Nosal*'s preclusion of GC Defendants' CFAA theory. The Court asked GC Defendants to explain why summary judgment should not be entered sua sponte in Plaintiffs' favor. *See Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982) ("It is, nevertheless, true that the overwhelming weight of authority supports the conclusion that if one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may sua sponte grant summary judgment to the non-moving party."); *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) ("Even when there has been no cross-motion for summary judgment, a district court may enter summary judgment sua sponte against a moving party if the losing party has had a "full and fair opportunity to ventilate the issues involved in the matter."). In response, GC Defendants identified just one district court decision as affirmative authority: *ViChip Corp. v. Lee*, 438 F. Supp. 2d 1087 (N.D. Cal. 2006). Not only did GC Defendants fail to cite *ViChip* in their briefs, but that decision pre-dates *Nosal* by approximately six years (as Defendants acknowledged after the hearing). *See* Dkt. No. 157 ("Defendants' Notice of Correction Following Hearing"). Because GC Defendants cannot succeed as a matter of law on their CFAA claim, the Court finds that summary judgment in Plaintiffs' favor is appropriate.

//

//

13

## IV. CONCLUSION

For these reasons, the Court **DENIES** Defendants' motions for summary judgment. In addition, the Court **GRANTS** summary judgment in Plaintiffs' favor on GC Defendants' CFAA claims.

**IT IS SO ORDERED.**

Dated: June 29, 2018

*Haywood S. Gilliam, Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge