UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ENERTRODE, INC.,

        Plaintiff,

    v.

GENERAL CAPACITOR CO. LTD, et al.,

        Defendants.

Case No.  16-cv-02458-HSG

**FINAL JURY INSTRUCTIONS**

Trial Date:  November 13, 2018
Ctrm:       Courtroom 2 — 4th Floor

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Final Jury Instruction No. 1 Re:**
**Duty of Jury**

Members of the Jury:  Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

United States District Court
Northern District of California

### Final Jury Instruction No. 2 Re:
### No Transcript Available to Jury / Taking Notes

During deliberations you will not have a transcript of the trial testimony.

Whether or not you took notes, you should rely on your own memory of the evidence.
Notes are only to assist your memory.  You should not be overly influenced by your notes or those
of other jurors.

**Final Jury Instruction No. 3 Re:**
**Burden of Proof — Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

United States District Court
Northern District of California

**Final Jury Instruction No. 4 Re:**
**Burden of Proof — Clear and Convincing Evidence**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**Final Jury Instruction No. 5 Re:**
**Two or More Parties — Different Legal Rights**

You should decide the case as to each party separately.  Unless otherwise stated, the instructions apply to all parties.

**Final Jury Instruction No. 6 Re:**
**What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

1.  the sworn testimony of any witness;

2.  the exhibits that are admitted into evidence;

3.  any facts to which the lawyers have agreed; and

4.  any facts that I have instructed you to accept as proved.

United States District Court
Northern District of California

**Final Jury Instruction No. 7 Re:**
**What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2. Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3. Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

4. Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

United States District Court
Northern District of California

**Final Jury Instruction No. 8 Re:**
**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

**Final Jury Instruction No. 9 Re:**
**Ruling on Objections**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overruled the objection, the question may be answered or the exhibit received. If I sustained the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustained an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I ordered that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the stricken evidence for any purpose.

**Final Jury Instruction No. 10 Re:**
**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.  the opportunity and ability of the witness to see or hear or know the things testified to;

2.  the witness's memory;

3.  the witness's manner while testifying;

4.  the witness's interest in the outcome of the case, if any;

5.  the witness's bias or prejudice, if any;

6.  whether other evidence contradicted the witness's testimony;

7.  the reasonableness of the witness's testimony in light of all the evidence; and

8.  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Final Jury Instruction No. 11 Re:**
**Bench Conferences and Recesses**

From time to time during the trial, it became necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury was present in the courtroom, or by calling a recess. Please understand that while you were waiting, we were working. The purpose of these conferences was not to keep relevant information from you, but to decide how certain evidence was to be treated under the rules of evidence and to avoid confusion and error.

Of course, we have done what we could to keep the number and length of these conferences to a minimum. I did not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Final Jury Instruction No. 12 Re:**
**Impeachment Evidence — Witness**

Evidence that a witness gave different testimony on a prior occasion may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

**Final Jury Instruction No. 13 Re:**
**Stipulations of Fact**

The parties have agreed to certain facts to be placed in evidence as Exhibit __.  You must therefore treat these facts as having been proved.

United States District Court
Northern District of California

**Final Jury Instruction No. 14 Re:**
**Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

The depositions of the following persons were introduced:

- Darryl Lewis; and
- Wei "Wendy" Zhao.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

**Final Jury Instruction No. 15 Re:**
**Foreign Language Testimony**

You have heard testimony of witnesses who testified in the Chinese language. Witnesses who do not speak English or are more proficient in another language testify through an official court interpreter. Although some of you may know the Chinese language, it is important that all jurors consider the same evidence. Therefore, you must accept the interpreter's translation of the witness's testimony and the English translation of any documents in Chinese. You must disregard any different meaning.

You must not make any assumptions about a witness or a party based solely on the use of an interpreter to assist that witness or party.

**Final Jury Instruction No. 16 Re:**
**Expert Opinion**

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions. Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Final Jury Instruction No. 17 Re:**
**Charts and Summaries Not Received in Evidence**

Certain charts and summaries not received in evidence were shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

1

2

**Final Jury Instruction No. 18 Re:**
**Charts and Summaries Received in Evidence**

3

4

5

6

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**Final Jury Instruction No. 19 Re:**
**Evidence in Electronic Format**

Those exhibits capable of being displayed electronically will be provided to you in that form, and you will be able to view them in the jury room. A computer, projector, printer and accessory equipment will be available to you in the jury room. A court technician will show you how to operate the computer and other equipment; how to locate and view the exhibits on the computer; and how to print the exhibits. You will also be provided with a paper list of all exhibits received in evidence.

If you need additional equipment or supplies, you may make a request by sending a note. In the event of any technical problem, or if you have questions about how to operate the computer or other equipment, you may send a note to my clerk, Ms. Riley, signed by your foreperson or by one or more members of the jury. Be as brief as possible in describing the problem and do not refer to or discuss any exhibit you were attempting to view.

If a technical problem or question requires hands-on maintenance or instruction, a court technician may enter the jury room with the clerk present for the sole purpose of assuring that the only matter that is discussed is the technical problem. When the court technician or any non-juror is in the jury room, the jury shall not deliberate. No juror may say anything to the court technician or any non-juror other than to describe the technical problem or to seek information about operation of equipment. Do not discuss any exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to make sure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform me immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

# INSTRUCTIONS ON BREACH OF CONTRACT

**Final Jury Instruction No. 20 Re:**
**Breach of Contract — Introduction**
*ENERTRODE, INC.'s Breach of Contract Claim Against GENERAL CAPACITOR for Breach of the TLSA*

ENERTRODE, INC. ("ETI") claims that it and GENERAL CAPACITOR INTERNATIONAL, INC. ("GC ITL") and GENERAL CAPACITOR CO., LTD. ("GC LTD") entered into a contract whereby ETI would design, procure equipment for and set up an Electrode Manufacture Line ("EML").  ETI claims that the contract further provided that ETI would grant GC ITL and GC LTD a non-exclusive license to use ETI's electrode technology for the purpose of manufacturing electrodes on the EML for use in GC ITL and GC LTD's lithium-ion ultracapacitors.

ETI claims that GC ITL and GC LTD breached this contract by failing to properly compensate it, using ETI's technology beyond the scope of the license and disclosing to third parties ETI's proprietary information.

ETI also claims that GC ITL and GC LTD's breach of this contract caused harm to ETI for which GC ITL and GC LTD should pay.

GC ITL and GC LTD deny that they breached the contract.

**Final Jury Instruction No. 21 Re:**
**Breach of Contract — Introduction**
*ZHONG's Breach of Contract Claim Against GENERAL CAPACITOR for Breach of the*
*Employment Agreement*

LINDA ZHONG ("ZHONG") claims that she and GC ITL and GC LTD entered into a written employment contract whereby ZHONG would be compensated in exchange for her services as an officer of the companies.

ZHONG claims that GC ITL and GC LTD breached this contract by failing to properly compensate her for her services.

GC ITL and GC LTD deny that they breached the contract.

**Final Jury Instruction No. 22 Re:**

**Breach of Contract — Introduction**

*GENERAL CAPACITOR's Breach of Contract Claim Against ZHONG for Breach of the*
*Employment Agreement*

GC ITL and GC LTD claim that they entered into an Employment Agreement with ZHONG.

GC ITL and GC LTD claim that ZHONG breached the Employment Contract by, among other things, secretly applying for a patent in her own name and refusing to assign it to GC ITL and GC LTD.

GC ITL and GC LTD also claims that ZHONG's breach of this contract caused harm to GC ITL and GC LTD for which ZHONG should pay.

ZHONG denies that she breached the contract.

**Final Jury Instruction No. 23 Re:**

**Breach of Contract — Introduction**

*GENERAL CAPACITOR's Breach of Contract Claim Against ENERTRODE, INC. for Breach of the TLSA*

GC ITL and GC LTD claim that they entered into a contract whereby ETI would design, procure equipment for and set up an Electrode Manufacture Line ("EML").  GC ITL and GC LTD claim that the contract further provided that ETI would grant GC ITL and GC LTD a non-exclusive license to use ETI's technology ("Technology") for use in GC ITL and GC LTD's manufacturing of lithium-ion ultracapacitors.

GC ITL and GC LTD allege that ETI breached this contract by: (a) failing to deliver the Technology to GC ITL and GC LTD, (b) failing to design procure equipment and set up a functioning EML, (c) failing to use commercially reasonable efforts to assist manufacturers and GC ITL and GC LTD to complete installation of the EML, and complete training, and (d) copying and disclosing  GC ITL and GC LTD confidential information.;

GC ITL and GC LTD claim that ETI's breach of this contract caused harm to GC ITL and GC LTD for which ETI should pay.

ETI denies that it breached the contract.

**Final Jury Instruction No. 24 Re:**
**Breach of Contract — Essential Factual Elements**

To recover damages from a breaching party for breach of contract, the party suing for breach must prove all of the following:

1. That the party suing for breach and the party being sued for breach entered into a contract;

2. That the party suing for breach did all, or substantially all, of the significant things that the contract required it to do;

3. That the contract required the breaching party to perform various terms and conditions;

4. That the breaching party failed to do some things that the contract required it to do and/or that did some things that the contract prohibited it from doing;

5. That the party suing for breach was harmed; and

6. That the breach of contract was a substantial factor in causing harm to the party suing for breach.

United States District Court
Northern District of California

**Final Jury Instruction No. 25 Re:**
**Interpretation — Disputed Term(s)**

ZHONG/ETI and GC LTD and GC ITL and GC LLC dispute the meaning of certain words and phrases in their contracts and will present evidence to explain their interpretations.

There are several contracts in this case. Each party claiming that a contract was breached must prove that their interpretation is correct.

In deciding what the words of a contract mean, you must decide what the parties intended at the time the contract was created. You may consider the usual and ordinary meaning of the language used in the contract as well as the circumstances surrounding the making of the contract.

**Final Jury Instruction No. 26 Re:**
**Interpretation – Meanings of Disputed Technical or Special Words**

You should assume that the parties intended technical words used in the contract to have the meaning that is usually given to them by people who work in that technical field, unless you decide that the parties clearly used the words in a different sense.

**Final Jury Instruction No. 27 Re:**
**Interpretation — Construction of Contract as a Whole**

In deciding what the words of a contract meant to the parties, you should consider the whole contract, not just isolated parts.  You should use each part to help you interpret the others, so that all the parts make sense when taken together.

**Final Jury Instruction No. 28 Re:**
**Breach of Contract — Interpretation – Construction by Conduct**

In deciding what the words in a contract meant to the parties, you may consider how the parties acted after the contract was created but before any disagreement between the parties arose.

**Final Jury Instruction No. 29 Re:**
**Interpretation — Reasonable Time**

If a contract does not state a specific time in which the parties are to meet the requirements of the contract, then the parties must meet them within a reasonable time. What is a reasonable time depends on the facts of each case, including the subject matter of the contract, the reasons each party entered into the contract, and the intentions of the parties at the time they entered the contract.

**Final Jury Instruction No. 30 Re:**
**Interpretation — Construction Against Drafter**

In determining the meaning of the words of the Technology Agreement, you must first consider all of the other instructions that I have given you. If, after considering these instructions, you still cannot agree on the meaning of the words, then you should interpret the contract against the person who drafted it.

**Final Jury Instruction No. 31 Re:**
**Affirmative Defense — Fraud**

GC LTD and GC ITL claim that the 2014 Technology License and Service Agreement ("TLSA") was not created because GC LTD and GC ITL's consent was obtained by fraud. To succeed, GC LTD and GC ITL must prove all of the following:

1. That ETI represented that (a) ETI and ZHONG had the knowledge, experience and expertise in designing and setting up an electrode manufacturing line ("EML") and (b) that ETI owned the "Technology" listed in the TSLA;

2. That ETI knew that the representations were not true;

3. That ETI made the representations to persuade GC LTD and GC ITL to agree to the 2014 Technology License Agreement;

4. That GC LTD and GC ITL reasonably relied on these representations; and

5. That GC LTD and GC ITL would not have entered into the TLSA if they had known that the representations were not true.

If you decide that GC LTD and GC ITL have proved all of the above, then no contract was created.

**Final Jury Instruction No. 32 Re:**
**Affirmative Defense — Waiver**

ETI claims that GC LTD and GC ITL breached the 2014 License and Service Agreement because they were licensed to use ETI's alleged Technology, but that these companies allegedly allowed GC LLC to use it. GC LTD and GC ITL claim that ETI gave up the right to make this claim. This is called a "waiver."

To succeed, GC LTD and GC ITL must prove both of the following by clear and convincing evidence:

    1.    That ETI knew that the TLSA did not permit GC LTD or GC ITL to allow GC LLC to use the Technology; and

    2.    That ETI freely and knowingly gave up ETI's right to prevent GC LTD and GC ITL from allowing GC LLC to use the Technology.

A waiver may be oral or written or may arise from conduct that shows that ETI gave up that right.

If GC LTD and GC ITL prove that ETI gave up its right to limit use of the alleged Technology to only GC LTD and GC ITL, then GC LLC was allowed to use the Technology.

**Final Jury Instruction No. 33 Re:**
**Affirmative Defense — Prior Breach**

If you find that GC LTD or GC ITL did not do something that they were required to do under 2014 Technology License and Agreement("TLSA") (or did something that they were prohibited from doing), such conduct is excused if ETI materially breached the TLSA first. GC LTD and GC ITL claim that ETI breached the TLSA by:

1. failing to design and procure the necessary equipment and set up an electrode manufacturing line as specified in the TLSA and to do so in a reasonable time;

2. failing to use commercially reasonable efforts to complete installation of the EML and training; and

3. copying and disclosing GC LTD or GC ITL confidential information.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Final Jury Instruction No. 34 Re:**
**Affirmative Defense — Unclean Hands**

### General Capacitor

GC LTD and GC ITL assert as a defense that ETI's claim for breach of contract is barred by its own misconduct.  To establish this defense, GC LTD and GC ITL must prove that ETI's conduct was unconscionable and resulted in prejudice to GC LTD and GC ITL.

ETI's claims can be barred if it engaged in misconduct that is intimately connected to its claims and of such a prejudicial nature that it would be unfair to allow ETI to prevail on its claims. If GC LTD and GC ITL establishes this defense, then ETI's claims are barred.


### ETI

ETI asserts as a defense that GC LTD and GC ITL's claim for breach of contract is barred by their own misconduct.  To establish this defense, ETI must prove that GC LTD and GC ITL's conduct was unconscionable and resulted in prejudice to ETI.

GC LTD and GC ITL's claims can be barred if they engaged in misconduct that is intimately connected to their claims and of such a prejudicial nature that it would be unfair to allow GC LTD and GC ITL to prevail on their claims.  If ETI establishes that, then GC LTD and GC ITL's claims are barred.

## INSTRUCTIONS ON INDUCING BREACH OF CONTRACT

**Final Jury Instruction No. 35 Re:**
**Inducing Breach of Contract**

ETI claims that JIANPING ZHENG ("ZHENG") and GC LLC intentionally caused GC ITL and GC LTD to breach their contract with ETI. To establish this claim, ETI must prove all of the following:

1. That there was a contract between ETI and GC ITL and GC LTD;

2. That ZHENG or GC LLC knew of the contract;

3. That ZHENG or GC LLC intended to cause GC ITL and/or GC LTD to breach the contract;

4. That ZHENG's or GC LLC's conduct caused GC ITL and/or GC LTD to breach the contract;

5. That ETI was harmed; and

6. That ZHENG's or GC LLC's conduct was a substantial factor in causing ETI's harm.

1

2

**Final Jury Instruction No. 36 Re:**
**Affirmative Defense — Manager's Privilege**

3     ETI claims that ZHENG caused GC LTD and GC ITL to breach the 2014 Technology

4 License and Service Agreement ("TLSA").

5     ZHENG cannot be liable for inducing a breach of the TLSA even if he caused GC LTD or

6 GC ITL to breach the TLSA, if he did so as a director, manager or advisor of GC LTD or GC ITL

7 and he was motivated, at least in part, to benefit GC LTD or GC ITL.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INSTRUCTIONS ON INTENTIONAL MISREPRESENTATION

**Final Jury Instruction No. 37 Re:**
**Intentional Misrepresentation**

GC ITL and GC LTD claim that ETI and/or ZHONG made false representations that harmed GC ITL and GC LTD. To establish this claim, GC ITL and GC LTD must prove all of the following:

1. That ETI and/or ZHONG represented to GC ITL and GC LTD that a fact was true;

2. That ETI's and/or ZHONG's representation was false;

3. That ETI and/or ZHONG knew that the representation was false when they made it, or that they made the representation recklessly and without regard for its truth;

4. That ETI and/or ZHONG intended that GC ITL and GC LTD rely on the representation;

5. That GC ITL and GC LTD reasonably relied on ETI's or ZHONG's representation;

6. That GC ITL and GC LTD was harmed; and

7. That GC ITL and GC LTD's reliance on ETI's and/or ZHONG's representation was a substantial factor in causing GC ITL and GC LTD harm.

1

2

**Final Jury Instruction No. 38 Re:**
**Reliance**

3      GC ITL and GC LTD relied on ETI's and/or ZHONG's misrepresentations and false

4  promise if:

5           1.      The alleged misrepresentation and false promise substantially influenced GC ITL

6                   and GC LTD to enter into the Technology License and Service Agreement

7                   ("TLSA") or the Employment Agreement; and

8           2.      GC ITL and GC LTD would probably not have entered into the TLSA or the

9                   Employment Agreement without the alleged misrepresentation or false promise.

10      It is not necessary for a misrepresentation or false promise to be the only reason for GC

11  ITL and GC LTD's conduct.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Final Jury Instruction No. 39 Re:**
**Reasonable Reliance**

In determining whether GC ITL and GC LTD's reliance on the alleged misrepresentation or false promise was reasonable, GC ITL and GC LTD must first prove that the matter was material. A matter is material if a reasonable person would find it important in determining his or her choice of action.

If you decide that the matter is material, you must then decide whether it was reasonable for GC ITL and GC LTD to rely on the alleged misrepresentation or false promise. In making this decision, take into consideration GC ITL and GC LTD's intelligence, knowledge, education, and experience.

However, it is not reasonable for anyone to rely on a misrepresentation or false promise that is preposterous. It also is not reasonable for anyone to rely on a misrepresentation or false promise if facts that are within its observation show that it is obviously false.

# INSTRUCTIONS ON MISAPPROPRIATION OF TRADE SECRETS

### Final Jury Instruction No. 40 Re:
### Misappropriation of Trade Secrets — Introduction

ZHONG and ETI claim that they are the owners/licensees/assignees of the idea of "pre-doping" a negative electrode by pressing multiple pieces of lithium foil onto the surface of the electrode and of the research regarding the efficacy of Stabilized Lithium Metal Powder ("SLMP") as a pre-doping lithium agent (collectively, the "Li Foil idea").

ZHONG and ETI claim that all information related to the Li Foil idea is a trade secret and that GC LTD, GC ITL and GC LLC (collectively "GC") misappropriated it.

"Misappropriation" means the improper acquisition, use or disclosure of the trade secret[s].

ZHONG and ETI also claim that GC's misappropriation caused them harm and caused GC to be unjustly enriched.

GC denies the above claims and also claims the following affirmative defenses:

1.     The trade secret was created by others and readily ascertainable by proper means.

2.     The trade secret was not acquired by improper means.

3.     The trade secret was transferred to GC.

4.     The trade secret was acquired from GC.

**Final Jury Instruction No. 41 Re:**
**Essential Factual Elements**

ZHONG/ETI claim that GC has misappropriated a trade secret. GC claims that ZHONG/ETI misappropriated a trade secret. To succeed on these claims, each party must prove all of the following:

1.  That it owned/was a licensee of certain concepts, designs, and information related to its alleged trade secrets;

2.  That information was a trade secret at the time of the misappropriation;

3.  That the other party improperly acquired, used or disclosed the trade secret[s];

4.  That the party was harmed and that misappropriating party was unjustly enriched; and

5.  That the misappropriating party's acquisition, use, or disclosure was a substantial factor in causing the other party harm and for the misappropriating party to be unjustly enriched.

United States District Court
Northern District of California

**Final Jury Instruction No. 42 Re:**
**"Trade Secret" Defined**

To prove that the information was a trade secret, the owner of the trade secret must prove all of the following:

1.    That the information was secret;

2.    That the information had actual or potential independent economic value because it was secret; and

3.    That the owner made reasonable efforts to keep the information secret.

**Final Jury Instruction No. 43 Re:**
**"Independent Economic Value" Explained**

A trade secret has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the information and who could obtain economic value from its disclosure or use.

In determining whether a trade secret had actual or potential independent economic value because it was secret, you may consider the following:

(a)     The extent to which the owner obtained or could obtain economic value from the information in keeping it secret;

(b)     The extent to which others could obtain economic value from the information related if it were not secret;

(c)     The amount of time, money, or labor that the owner expended in developing the trade secret;

(d)     The amount of time, money, or labor that would be saved by a competitor who used the trade secret.

The presence or absence of any one or more of these factors is not necessarily determinative.

**Final Jury Instruction No. 44 Re:**
**Secrecy Requirement**

The secrecy required to prove that something is a trade secret does not have to be absolute in the sense that no one else in the world possesses the information. It may be disclosed to employees involved in use of the trade secret as long as they are instructed to keep the information secret. It may also be disclosed to nonemployees if they are obligated to keep the information secret. However, it must not have been generally known to the public or to people who could obtain value from knowing it.

**Final Jury Instruction No. 45 Re:**
**Misappropriation by Acquisition**

A party misappropriated another's trade secrets by acquisition if it acquired the trade secret[s] and knew or had reason to know that it used improper means to acquire them.

**Final Jury Instruction No. 46 Re:**
**Misappropriation by Disclosure**

A party misappropriated the trade secrets of another party by disclosure if it:

1.   Disclosed them without the owner's consent; and

2.   Did any of the following:

    a.   Acquired knowledge of the trade secret[s] by improper means; or

    b.   At the time of disclosure, knew or had reason to know that its knowledge of the trade secrets came from or through a third party that had previously acquired the trade secret[s] by improper means; or

    c.   At the time of disclosure, knew or had reason to know that its knowledge of the trade secrets was acquired in accordance with a contract, which created a duty to keep the information secret; or

    d.   At the time of disclosure, knew or had reason to know that its knowledge of the trade secrets came from or through a third party that had a duty to keep the information secret; or

    e.   Before a material change of its position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

**Final Jury Instruction No. 47 Re:**
**Misappropriation by Use**

A party misappropriated the trade secrets of another party by use if it:

1.    Used them without consent; and

2.    Did any of the following:

      a.    Acquired knowledge of the trade secret[s] by improper means; or

      b.    At the time of use, knew or had reason to know that its knowledge of trade secret[s] came from or through a third party that had previously acquired the trade secret[s] by improper means; or

      c.    At the time of use, knew or had reason to know that its knowledge of the trade secret[s] was acquired under circumstances creating a legal obligation to limit use of the information secret; or

      d.    At the time of use, knew or had reason to know that its knowledge of the trade secret[s] came from or through a third party that had a duty to limit use of the information; or

      e.    Before a material change of its position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

**Final Jury Instruction No. 48 Re:**
**Improper Means of Acquiring Trade Secrets**

Improper means of acquiring a trade secret or knowledge of a trade secret include, but are not limited to, theft/bribery/misrepresentation/breach or inducing a breach of a duty to maintain secrecy, wiretapping or electronic eavesdropping.

However, it is not improper to acquire a trade secret or knowledge of the trade secret by any of the following:

1.     Independent efforts to invent or discover the information;

2.     Reverse engineering; that is, examining or testing a product to determine how it works, by a person who has a right to possess the product;

3.     Obtaining the information as a result of a license agreement with the owner of the information;

4.     Observing the information in public use or on public display; or

5.     Obtaining the information from published literature, such as trade journals, reference books, the Internet, or other publicly available sources.

**Final Jury Instruction No. 49 Re:**
**Affirmative Defense — Information Was Readily Ascertainable by Proper Means**

A party does not misappropriate a trade secret if that party proves that the information was readily ascertainable by proper means at the time of the alleged acquisition/use/or disclosure.

There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.

**Final Jury Instruction No. 50 Re:**
**Employer Liability**

ETI is liable for misappropriation of trade secrets by ZHONG if at the time of ZHONG's misappropriation of trade secrets, ZHONG was employed by ETI and was acting within the scope of her employment by ETI.

**Final Jury Instruction No. 51 Re:**
**Remedies for Misappropriation of Trade Secret**

If a party proves that another party misappropriated its trade secrets, then the owner is entitled to recover damages if the misappropriation caused the owner to suffer an actual loss or caused the misappropriating party to be unjustly enriched.

If the misappropriation did not cause a trade secret owner to suffer an actual loss or the misappropriating party to be unjustly enriched, a trade secret owner may still be entitled to a reasonable royalty for no longer than the period of time the use could have been prohibited. However, I will calculate the amount of any royalty.

**Final Jury Instruction No. 52 Re:**
**Unjust Enrichment**

A misappropriating party was unjustly enriched if its misappropriation caused it to receive a benefit that it otherwise would not have achieved.

To decide the amount of any unjust enrichment, first determine the value of the misappropriating party's benefit that would not have been achieved except for its misappropriation. Then subtract from that amount the misappropriating party's reasonable expenses, including the value of those items presented at trial, such as labor, materials, rents, interest, etc. In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for the trade secret owner's actual loss.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Final Jury Instruction No. 53 Re:**
**Punitive Damages for Willful and Malicious Misappropriation**

If you decide that a party's misappropriation caused the other party harm, you must decide whether that conduct justifies an award of punitive damages. The purposes of punitive damages are to punish a wrongdoer for the harmful conduct and to discourage similar conduct in the future.

In order to recover punitive damages, a trade secret owner must prove by clear and convincing evidence that the misappropriating party acted willfully and maliciously. You must determine whether the misappropriating party acted willfully and maliciously.

"Willfully" means that a party acted with a purpose or willingness to commit the act or engage in the conduct in question, and the conduct was not reasonable under the circumstances at the time and was not undertaken in good faith.

"Maliciously" means that a party acted with an intent to cause injury, or that its conduct was despicable and was done with a willful and knowing disregard for the rights of others. "Despicable conduct" is conduct so vile, base, or wretched that it would be looked down on and despised by ordinary decent people. A party acted with knowing disregard if it was aware of the probable consequences of its conduct and deliberately failed to avoid those consequences.

# INSTRUCTIONS ON BREACH OF FIDUCIARY DUTY

### Final Jury Instruction No. 54 Re:
### Duty of Jury

GC contends that ZHONG violated what is called a "fiduciary" duty or obligation that she owed to GC.

A "fiduciary" obligation exists whenever one person—the beneficiary—places trust and confidence in another person—the fiduciary—relying upon the fiduciary to exercise discretion or expertise in acting for the beneficiary; and the fiduciary knowingly accepts that trust and confidence and thereafter undertakes to act on behalf of the beneficiary by exercising the fiduciary's own discretion and expertise. An officer of a company owes a fiduciary duty to the company.

The law forbids a fiduciary from acting in any manner adverse or contrary to the interests of the beneficiary, or from acting for the fiduciary's own benefit in relation to the subject matter of their relationship. The fiduciary thus has a responsibility to disclose any conflicts between the fiduciary's interests and the beneficiary's interests which might make the fiduciary act in the fiduciary's own best interest at the expense or the detriment of the beneficiary. The beneficiary is entitled to the best efforts of the fiduciary on the beneficiary's behalf, and the fiduciary must exercise skill, care and diligence when acting on behalf of the beneficiary. The fiduciary owes to the beneficiary the duty to refrain from self-dealing, the duty of loyalty, the overall duty to not take unfair advantage and to act in the best interest of the beneficiary, and the duty to disclose material facts.

Within the scope of the action acknowledged or agreed to by the fiduciary, then, the fiduciary is required to make truthful and complete disclosures to those to whom a fiduciary obligation is owed, and the fiduciary is forbidden to obtain an unreasonable advantage at the client's expense. Generally, a fiduciary duty has been breached in all cases in which influence has been acquired and abused and in which confidence has been given and betrayed.

To recover on this claim, GC must prove each of the following by a preponderance of the

55

evidence:

First, that a fiduciary relationship existed between GC and ZHONG;

Second, that ZHONG violated the fiduciary obligation; and

Third, that GC suffered damages as a proximate result of that violation of the fiduciary obligation.

If you find that ZHONG breached a fiduciary duty to GC, then you should find for GC on this claim and award to GC an amount in damages resulting from the breach.

# INSTRUCTIONS ON TORTIOUS INTERFERENCE

**Final Jury Instruction No. 55 Re:**
**Intentional Interference with Contractual Relations — Essential Factual Elements**

GC claims that ZHONG and ETI intentionally interfered with the contract between GC and SIG ASIA INVESTMENT LLLP. To establish this claim, GC must prove all of the following:

1.  That there was a contract between GC and SIG ASIA INVESTMENT LLLP;

2.  That ZHONG and/or ETI knew of the contract;

3.  That ZHONG's and/or ETI's conduct prevented performance or made performance more expensive or difficult;

4.  That ZHONG and/or ETI intended to disrupt the performance of this contract, or knew that disruption of performance was certain or substantially certain to occur;

5.  That GC was harmed; and

6.  That ZHONG and/or ETI's conduct was a substantial factor in causing harm to GC.

**Final Jury Instruction No. 56 Re:**
**Interference with Prospective Economic Relations — Essential Factual Elements**

GC claims that ZHONG and ETI intentionally interfered with an economic relationship between GC and SIG ASIA INVESTMENT LLLP that probably would have resulted in an economic benefit to GC. To establish this claim, GC must prove all of the following:

1.     That GC and SIG ASIA INVESTMENT LLLP were in an economic relationship that probably would have resulted in an economic benefit to GC;

2.     That ZHONG and/or ETI knew of the relationship;

3.     That ZHONG and/or ETI engaged in wrongful conduct;

4.     That by engaging in this conduct, ZHONG and/or ETI intended to disrupt the relationship, or knew that disruption of the relationship was certain or substantially certain to occur;

5.     That the relationship was disrupted;

6.     That GC was harmed; and

7.     That ZHONG and/or ETI's conduct was a substantial factor in causing harm to GC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTIONS ON CIVIL THEFT**

**Final Jury Instruction No. 57 Re:**
**Civil Theft**

GENERAL CAPACITOR contends that ZHONG is liable for civil theft of GENERAL CAPACITOR's alleged "trade secrets," as I previously have explained trade secrets to you. "GENERAL CAPACITOR," as used in this claim, refers to GC LLC and GC ITL.  A person commits theft if he knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to deprive that other person of his right to it.  In order to prove that ZHONG is liable for civil theft, GENERAL CAPACITOR must prove by clear and convincing evidence that:

1.      ZHONG obtained or used or endeavored to obtain or use the GENERAL CAPACITOR trade secrets, as previously defined;

2.      ZHONG did so with criminal intent; that is, with the intent to deprive GENERAL CAPACITOR either temporarily or permanently, of a right to the Property or a benefit from it; and

3.      ZHONG's actions injured GENERAL CAPACITOR.

You will notice that the civil theft claim must be proved by clear and convincing evidence. Clear and convincing evidence is something more than a preponderance of the evidence; it is evidence that leaves you with a firm conviction that the claim is true.

 If you find for GENERAL CAPACITOR on the claim of civil theft, [and against ZHONG] you will then consider the issue of the amount of money damages to be awarded to GENERAL CAPACITOR.  You may award GENERAL CAPACITOR only those damages shown to be proximately caused by ZHONG's wrongful action.

Damages are the proximate or legal result of a wrongful act of another if you find from clear and convincing evidence that, except for the wrongful act, the damages would not have occurred.  A wrongful act may be a proximate or legal cause of damages even though the wrongful act operates in combination with the act of another so long as the wrongful act contributes substantially to producing the damages.  In considering the issue of GENERAL CAPACITOR's damages, you should assess the amount you find to be justified by clear and convincing evidence

59

as full, just and reasonable compensation for all GENERAL CAPACITOR's damages, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize ZHONG. Also, compensatory damages must not be based on speculation or guesswork because it is only actual damages that are recoverable.

**Final Jury Instruction No. 58 Re:**
**Notice**

Before filing suit for civil theft, GENERAL CAPACITOR must have made a written demand of ZHONG for $200 or treble the damage amount claimed. To find that ZHONG is liable for civil theft, you must find that GENERAL CAPACITOR satisfied this written notice requirement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Final Jury Instruction No. 59 Re:**
**Employer Liability**

ETI is liable for civil theft by ZHONG if at the time of ZHONG's civil theft, ZHONG was employed by ETI and was acting within the scope of her employment by ETI

## INSTRUCTIONS ON COMPUTER ABUSE AND DATA RECOVERY ACT

**Final Jury Instruction No. 60 Re:**
**Computer Abuse and Data Recovery Act**

GC claim that ETI and ZHONG violated Section 668.803 of the Florida Computer Abuse and Data Recovery Act.

To establish a claim under this section, each GC entity must prove that ETI and/or ZHONG knowingly and with intent to cause harm or loss:

(1)    Obtained information from a protected computer without authorization and, as a result, caused harm or loss;

(2)    Caused the transmission of a program, code, or command to a protected computer without authorization and, as a result of the transmission, caused harm or loss; or

(3)    Trafficked in any technological access barrier through which access to a protected computer may have been obtained without authorization.

If each GC entity proves the above, ETI is liable to the extent provided in Section 668.804, as I will instruct you in a few minutes.

**Final Jury Instruction No. 61 Re:**
**Definitions**

For purposes of the Computer Abuse and Data Recovery Act:

(1) "Authorized user" means a director, officer, employee, third-party agent, contractor, or consultant of the owner, operator, or lessee of the protected computer or the owner of information stored in the protected computer if the director, officer, employee, third-party agent, contractor, or consultant is given express permission by the owner, operator, or lessee of the protected computer or by the owner of information stored in the protected computer to access the protected computer through a technological access barrier. Such permission, however, is terminated upon revocation by the owner, operator, or lessee of the protected computer or by the owner of information stored in the protected computer, or upon cessation of employment, affiliation, or agency with the owner, operator, or lessee of the protected computer or the owner of information stored in the protected computer.

(2) "Business" means any trade or business regardless of its for-profit or not-for-profit status.

(3) "Computer" means an electronic, magnetic, optical, electrochemical, or other high-speed data processing device that performs logical, arithmetic, or storage functions and includes any data storage facility, data storage device, or communications facility directly related to, or operating in conjunction with, the device.

(4) "Harm" means any impairment to the integrity, access, or availability of data, programs, systems, or information.

(5) "Loss" means any of the following:

(a) Any reasonable cost incurred by the owner, operator, or lessee of a protected computer or the owner of stored information, including the reasonable cost of conducting a damage assessment for harm associated with the violation and the reasonable cost for remediation efforts, such as restoring the data, programs, systems, or information to the condition it was in before the violation.

(b) Economic damages.

(c) Lost profits.

64

(d)     Consequential damages, including the interruption of service.

(e)     Profits earned by a violator as a result of the violation.

(6)     "Protected computer" means a computer that is used in connection with the operation of a business and stores information, programs, or code in connection with the operation of the business in which the stored information, programs, or code can be accessed only by employing a technological access barrier.

(7)     "Technological access barrier" means a password, security code, token, key fob, access device, or similar measure.

(8)     "Traffic" means to sell, purchase, or deliver.

(9)     "Without authorization" means access to a protected computer by a person who:

(a)     Is not an authorized user;

(b)     Has stolen a technological access barrier of an authorized user; or

(c)     Circumvents a technological access barrier on a protected computer without the express or implied permission of the owner, operator, or lessee of the computer or the express or implied permission of the owner of information stored in the protected computer. The term does not include circumventing a technological measure that does not effectively control access to the protected computer or the information stored in the protected computer.

**Final Jury Instruction No. 62 Re:**
**Computer Abuse and Data Recovery Act**

For purposes of the Computer Fraud and Data Recovery Act:

(1)     A person who brings a civil action for a violation under Section 668.803 may:

       (a)     Recover actual damages, including the person's lost profits and economic

           damages; and

       (b)     Recover the violator's profits that are not included in the computation of

           actual damages under paragraph (a)

## INSTRUCTIONS ON DAMAGES

### Final Jury Instruction No. 63 Re:
### Introduction to Contract Damages

If you decide that a party has proved its claim against a breaching party for breach of contract, you also must decide how much money will reasonably compensate the non-breaching party for the harm caused by the breach. This compensation is called "damages." The purpose of such damages is to put the non-breaching party in as good a position as it would have been if the non-breaching party had performed as promised.

To recover damages for any harm, the party suing for breach must prove that when the contract was made, both parties knew or could reasonably have foreseen that the harm was likely to occur in the ordinary course of events as a result of the breach of the contract.

A party also must prove the amount of its damages according to the following instructions. It does not have to prove the exact amount of damages. You must not speculate or guess in awarding damages.

**Final Jury Instruction No. 64 Re:**
**Breach of Contract — Set-Off**

If you find that GC LTD or GC ITL breached the 2014 Technology License and Service Agreement and that such breach damaged ETI, you must set-off from those damages the amount of damages caused by ETI or ZHONG to GC LTD or GC ITL, if any.

If you find that ETI breached the 2014 Technology License and Service Agreement and that such breach damaged GC LTD or GC ITL, you must set-off from those damages the amount of damages caused by GC LTD or GC ITL if GC LTD or GC ITL also breached the 2014 Technology License and Service Agreement.

United States District Court
Northern District of California

**Final Jury Instruction No. 65 Re:**
**Items of Economic Damage**

The following are the specific items of economic damages claimed by ZHONG:

1.     Value of "performance bonus."

2.     Unjust enrichment of GC

**Final Jury Instruction No. 66 Re:**
**Items of Economic Damage**

The following are the specific items of economic damages claimed by ETI:

1.      Unjust enrichment of GC.

**Final Jury Instruction No. 67 Re:**
**Damages From Multiple Defendants**

In this case, ZHONG and ETI (on the one hand) and GC, ZHENG and WANJUN BEN CAO ("CAO") (on the other) seek damages from more than one defendant. You must determine the liability of each defendant separately.

If you determine that more than one defendant is liable for damages, you will be asked to find the total damages.

In deciding on the amount of damages, consider only the injured parties' claimed losses. Do not attempt to divide the damages between/among the defendants. The allocation of responsibility for payment of damages among multiple defendants is to be done by the court after you reach your verdict.

United States District Court
Northern District of California

**Final Jury Instruction No. 68 Re:**
**Damages on Multiple Legal Theories**

3      In this case, ZHONG and ETI (on the one hand) and GC, ZHENG and CAO (on the other)

4  seek damages from each other under more than one legal theory. However, each item of damages

5  may be awarded only once, regardless of the number of legal theories alleged.

6      You will be asked to decide whether any party is liable to any other party under the

7  following legal theories:

8  For ETI and ZHONG:

9     1.    Breach of the Employment Agreement;

10    2.    Breach of the TLSA

11    3.    Inducing breach of the TLSA;

12    4.    Misappropriation of Trade Secrets;

13    5.    Failure to pay wages;

14

15  For GC:

16    1.    Breach of the Employment Agreement;

17    2.    Breach of the TLSA

18    3.    Fraud in the Inducement

19    4.    Misappropriation of Trade Secrets

20    5.    Tortious Interference

21    6.    Florida Computer Abuse and Data Recovery Act

22    7.    Civil Theft

23

24

25

26

27

28

United States District Court
Northern District of California

**Final Jury Instruction No. 69 Re:**
**Prejudgment Interest**

If you decide that a party is entitled to recover damages for past economic loss in one or more of the categories of damages that it claims, then you must decide whether the party should also receive prejudgment interest on each item of loss in those categories.

Prejudgment interest is the amount of interest the law provides to a plaintiff to compensate for the loss of the ability to use the funds. If prejudgment interest is awarded, it is computed from the date on which each loss was incurred until the date on which you sign your verdict.

Whether the party should receive an award of prejudgment interest on all, some, or none of any past economic damages that you may award is within your discretion. If you award these damages to a party, you will be asked to address prejudgment interest in the special verdict form.

**Final Jury Instruction No. 70 Re:**
**Punitive Damages**

1.     *Vicarious liability for acts of employee:*

GENERAL CAPACITOR claims that punitive damages should be awarded against ZHONG and ETI for the fraud, breach of fiduciary duty, and tortious interference of ZHONG. Punitive damages are warranted against ZHONG if you find by clear and convincing evidence that ZHONG was personally guilty of intentional misconduct or gross negligence, which was a substantial cause of loss or damage to GENERAL CAPACITOR. Under those circumstances you may, in your discretion, award punitive damages against ZHONG. If clear and convincing evidence does not show such conduct by ZHONG, punitive damages are not warranted against either ZHONG or ETI.

If you find that punitive damages are warranted against ZHONG, you may also, in your discretion, award punitive damages against ETI if you find from clear and convincing evidence that:

> (A)     ETI actively and knowingly participated in such conduct of ZHONG; or
>
> (B)     the officers, directors or managers of ETI knowingly condoned, ratified, or consented to such conduct of ZHONG; or
>
> (C)     ETI engaged in conduct that constituted gross negligence and that contributed to the loss or damage to GENERAL CAPACITOR.

If clear and convincing evidence does not show such conduct by ETI, punitive damages are not warranted against ETI.

"Intentional misconduct" means that ZHONG had actual knowledge of the wrongfulness of the conduct and there was a high probability of injury or damage to GENERAL CAPACITOR and, despite that knowledge, ZHONG intentionally pursued that course of conduct, resulting in injury or damage. "Gross negligence" means that ZHONG's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

"Clear and convincing evidence" differs from the "greater weight of the evidence" in that it

is more compelling and persuasive. As I have already instructed you, "greater weight of the evidence" means the more persuasive and convincing force and effect of the entire evidence in the case.

        2.      *Closing punitive damages instruction:*

       If you decide that punitive damages are warranted against ZHONG and/or ETI then you must decide the amount of punitive damages, if any, to be assessed as punishment against ZHONG and/or ETI and as a deterrent to others. This amount would be in addition to the compensatory damages you have previously awarded. In making this determination, you should consider the following:

          (A)     the nature, extent and degree of misconduct and the related circumstances, including the following:

               i.     whether the wrongful conduct was motivated solely by unreasonable financial gain;

               ii.    whether, at the time of loss or damage, ZHONG and/or ETI had a specific intent to harm GENERAL CAPACITOR and the conduct of ZHONG and/or ETI did in fact harm GENERAL CAPACITOR, and

          (B)     the financial resources of ZHONG and/or ETI.

       However, you may not award an amount that would financially destroy ZHONG or ETI.

       You may in your discretion decline to assess punitive damages. You may assess punitive damages against ZHONG and not ETI or against both. Punitive damages may be assessed against ZHONG and ETI in different amounts.

# INSTRUCTIONS ON DELIBERATION

### Final Jury Instruction No. 71 Re:
### Duty to Deliberate

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

1
2

**Final Jury Instruction No. 72 Re:**
**Consideration of Evidence — Conduct of the Jury**

3     Because you must base your verdict only on the evidence received in the case and on these

4 instructions, I remind you that you must not be exposed to any other information about the case or

5 to the issues it involves.  Except for discussing the case with your fellow jurors during your

6 deliberations:

7     Do not communicate with anyone in any way and do not let anyone else communicate with

8 you in any way about the merits of the case or anything to do with it.  This includes discussing the

9 case in person, in writing, by phone or electronic means, via email, via text messaging, or any

10 internet chat room, blog, website or application, including but not limited to Facebook, YouTube,

11 Twitter, Instagram, LinkedIn, Snapchat, or any other forms of social media.  This applies to

12 communicating with your family members, your employer, the media or press, and the people

13 involved in the trial.  If you are asked or approached in any way about your jury service or

14 anything about this case, you must respond that you have been ordered not to discuss the matter

15 and to report the contact to the court.

16     Do not read, watch, or listen to any news or media accounts or commentary about the case

17 or anything to do with it; do not do any research, such as consulting dictionaries, searching the

18 Internet, or using other reference materials; and do not make any investigation or in any other way

19 try to learn about the case on your own.  Do not visit or view any place discussed in this case, and

20 do not use Internet programs or other devices to search for or view any place discussed during the

21 trial.  Also, do not do any research about this case, the law, or the people involved—including the

22 parties, the witnesses or the lawyers—until you have been excused as jurors.  If you happen to

23 read or hear anything touching on this case in the media, turn away and report it to me as soon as

24 possible.

25     These rules protect each party's right to have this case decided only on evidence that has

26 been presented here in court.  Witnesses here in court take an oath to tell the truth, and the

27 accuracy of their testimony is tested through the trial process.  If you do any research or

28 investigation outside the courtroom, or gain any information through improper communications,

1  then your verdict may be influenced by inaccurate, incomplete or misleading information that has

2  not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial

3  jury, and if you decide the case based on information not presented in court, you will have denied

4  the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very

5  important that you follow these rules.

6       A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a

7  mistrial could result that would require the entire trial process to start over.  If any juror is exposed

8  to any outside information, please notify the court immediately.

United States District Court
Northern District of California

## Final Jury Instruction No. 73 Re:
## Communication with Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through Ms. Riley, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

United States District Court
Northern District of California

**Final Jury Instruction No. 74 Re:**
**Return of Verdict**

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk, Ms. Riley, that you are ready to return to the courtroom.

**IT IS SO ORDERED.**

Dated:

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge