UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENERTRODE, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>GENERAL CAPACITOR CO. LTD, et al.,<br><br>        Defendants. | Case No. 16-cv-02458-HSG<br><br>**ORDER DENYING DEFENDANTS' RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL AND REMITTITUR, AND DENYING PLAINTIFFS' MOTION FOR EXEMPLARY DAMAGES, ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. Nos. 378, 389, 390 |

Plaintiffs and Counter-Defendants—EnerTrode, Inc. ("ETI") and Linda Zhong ("Dr. Zhong")—and Defendants and Counter-Plaintiffs—General Capacitor Co. Ltd ("GC LTD"), General Capacitor International, Inc. ("GC ITL"), General Capacitor LLC ("GC LLC") (collectively, "GC"), Wanjun Cao ("Dr. Cao"), and Jianping Zheng ("Dr. Zheng")—tried this case before a jury between November 13, 2018 and December 5, 2018.

Pending before the Court are two renewed motions for judgment as a matter of law and for new trial and remittitur by Defendants. Defendants Dr. Zheng, Dr. Cao, and GC LLC filed the first motion. *See* Dkt. No. 389 ("Zheng Mot."). Defendants GC LTD and GC ITL filed the second. *See* Dkt. No. 390 ("GC Mot."). Also pending before the Court is Plaintiffs' motion for exemplary damages, attorneys' fees, and costs. *See* Dkt. No. 378 ("Pls. Mot."). Briefing for all motions is complete. *See* Dkt. Nos. 382 ("Pls. Opp."), 383 ("Pls. Reply"), 391 ("Zheng Opp."), 392 ("GC Opp."), 393 ("Zheng Reply"), 394 ("GC Reply"). For reasons set forth below, the Court **DENIES** all of the pending motions.[1]

---

[1] The Court finds these matters appropriate for disposition without oral argument and the matters are deemed submitted. *See* Civil L.R. 7-1(b).

## I. BACKGROUND

A jury trial was held beginning on November 13, 2018. On December 10, 2018, the jury returned a verdict after more than two days of deliberations. Dkt. No. 372. The jury found: (1) GC ITL and GC LTD breached the Technology License and Service Agreement ("TLSA"), resulting in $12,293.61 in damages; (2) GC LLC, but not Dr. Zheng, induced breach of the TLSA, resulting in no damages; (3) GC ITL and GC LTD breached Dr. Zhong's employment contract, resulting in $2,362,500 in damages; (4) all Defendants misappropriated Plaintiffs' "Li Foil Idea" trade secrets, resulting in $247,474 in damages; (5) Dr. Zheng, but no other Defendant, acted willfully and maliciously in misappropriating Plaintiffs' trade secrets; (6) Dr. Zhong is not liable for breach her employment contract; (7) neither Plaintiff is liable for fraud in the inducement; (8) Dr. Zhong is not liable for breach of fiduciary duty; (9) neither Plaintiff is liable for tortious interference; (10) neither Plaintiff is liable for misappropriation of trade secrets; (11) neither Plaintiff is liable for civil theft; (12) neither Plaintiff is liable for violating the Computer Abuse and Data Recovery Act; and (13) ETI is not liable for breach of the TLSA contract. *Id.* On January 7, 2019, Plaintiffs timely filed their motion for exemplary damages, attorneys' fees and costs. *See* Pls. Mot.

The Court entered final judgment on January 30, 2019. Dkt. No. 384. On February 27, Defendants timely filed the two pending motions for renewed judgment as a matter of law under Federal Rule of Civil Procedure 50(b), and for a new trial under Federal Rule of Civil Procedure 59, and remittitur.

## II. DEFENDANTS' RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW

### A. Legal Standard

"[A] party must make a Rule 50(a) motion for judgment as a matter of law before a case is submitted to the jury. If the judge denies or defers ruling on the motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)." *Equal Emp't Opportunity Comm'n v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). In considering a Rule 50(b) motion that reasserts arguments presented in a Rule 50(a) motion, a

2

court must uphold the jury's verdict if "substantial evidence" supports the jury's conclusion. *Castro v. Cty of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016). Substantial evidence means "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion" from the same evidence. *Id.* (internal quotations omitted). A court should only grant a Rule 50(b) motion if, after construing all evidence in the light most favorable to the nonmoving party, the record "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* (internal quotations omitted).

It is well established that parties generally may not raise arguments in a post-trial Rule 50(b) motion that were not raised in a pre-verdict Rule 50(a) motion. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018); *see also Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) ("A post trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion." (citing Fed. R. Civ. P. 50 advisory committee's note to 1991 amendment)). As the Ninth Circuit has explained, this rule's purpose is twofold: "First it preserves the sufficiency of the evidence as a question of law, allowing the district court to review its initial denial of judgment as a matter of law instead of forcing it to 'engage in an impermissible reexamination of facts found by the jury.' Second, it calls to the court's and the parties' attention any alleged deficiencies in the evidence at a time when the opposing party still has an opportunity to correct them." *Freund*, 347 F.3d at 761 (quoting *Lifshitz v. Walter Drake & Sons*, 806 F.2d 1426, 1428–29 (9th Cir. 1986)). The Ninth Circuit has recognized a narrow exception to the prohibition against raising new arguments in a post-trial Rule 50(b) motion, under which district courts may "review[] the jury's verdict for plain error," but courts "should reverse only if such plain error would result in a manifest miscarriage of justice." *Go Daddy Software*, 581 F.3d at 961 (quoting *Janes v. Wal–Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002)). The Ninth Circuit has cautioned that this is an "extraordinarily deferential" standard and "is limited to whether there was *any* evidence to support the jury's verdict." *Id.* at 962 (internal quotations omitted).

//

//

**B. Discussion**

Defendants assert four general arguments in their post-verdict Rule 50(b) motions: (1) Defendants are entitled to judgment on Plaintiffs' misappropriation of trade secret claim because Plaintiffs' alleged trade secret was publicly known and readily ascertainable, *see* Zheng Mot. at 3–8; GC Mot. at 3–4; (2) there is insufficient evidence to prove Defendants caused the damages attributed to Plaintiffs' misappropriation of trade secrets claim, *see* Zheng Mot. at 9–11; GC Mot. at 4–6; (3) Plaintiffs' damages awards were based on purportedly flawed damages calculations, *see* Zheng Mot. at 11–12; GC Mot. at 6–8; and (4) Defendants are entitled to judgment as a matter of law on their affirmative claims, GC Mot. at 11–13. For the reasons that follow, the Court rejects each of Defendants' arguments.

### i. Plaintiffs' Misappropriation of Trade Secret Claim

Defendants argue that the undisputed evidence at trial showed there was no trade secret for Defendants to misappropriate because any purported trade secret of Plaintiffs "was readily ascertainable." *See, e.g.*, Zheng Mot. at 3–8. Relying largely on one statement by Dr. Zhong on cross-examination, Defendants contend that Plaintiffs' alleged trade secret "was 'using pieces of lithium film pressed on the surface of the negative electrode and evenly distributed.'" *Id.* at 4 (quoting Trial Tr. Nov. 15, 2018 at 68:14–17). Having posited this narrow view of Plaintiffs' trade secret, Defendants cite to Plaintiffs' expert and various other evidence in the record to show that the idea of merely pressing lithium strips on a negative electrode was readily ascertainable in the trade. *See id.* at 4–5 (citing Dr. Zhong's testimony), 5–6 (citing testimony of Dr. Zheng, Dr. Cao, and George Moye), 6 (citing Plaintiffs' expert, Dr. Lipka, and Defendants' expert, Dr. Miller, the latter of whom "testified that the idea of using pieces of lithium film evenly spaced on the negative electrode for pre-lithiation was not new in 2015").

Plaintiffs object to Defendants' narrow articulation of Plaintiffs' trade secret, based on a few lines of Dr. Zhong's testimony. *See* Zheng Opp. at 3–9. To the contrary, Dr. Zhong elsewhere testified that part of Plaintiffs' trade secret idea included other more-granular aspects, such as the ratio and pattern of lithium strips, based on the quality and quantity of the electrode material and commercial availability of the lithium source. *Id.* at 4–5 (citing Trial Tr. Nov. 14,

4

2018, at 122:5–18).

Defining Plaintiffs' trade secret was a heavily disputed issue at trial. Even in crafting the jury instructions, Defendants sought to narrow Plaintiffs' trade secret to "uniformly pressing multiple pieces of lithium foil onto the surface of a negative electrode." *See* Dkt. No. 346 at 63. But as the Court explained in rejecting Defendants' narrow jury instruction, "[i]t's the plaintiffs' purported secret" and thus Defendants are not entitled to frame the inquiry. *See* Trial Tr. Dec. 4, 2018, at 227:20–229:14. The Court added that Defendants, of course, may "argue the weight of the evidence" to the jury and dispute the scope of the trade secret, but the Court was unwilling to impose Defendants' definition of Plaintiffs' trade secret as a matter of law. *See id.* at 228:17–21 ("Counsel, the jury instructions aren't the place to argue the weight of the evidence. This is their claim, right, and you are saying, 'Well, we chipped away at her claim.' Right now we need to come up with a description of what their claim is.").

The same logic applies here. As noted above, the parties submitted conflicting evidence about the scope of Plaintiffs' trade secret, raising a question of fact to be decided by the jury. And given the totality of the evidence introduced at trial, a reasonable jury could have determined that Plaintiffs' trade secret included more than just pressing evenly distributed lithium strips on a negative electrode. As a result, a reasonable jury could have determined that Plaintiffs' broader trade secret was not readily ascertainable because evidence was not introduced proving that, for example, Plaintiffs' particular ratio and pattern were readily ascertainable.[2]

Thus, judgment as a matter of law is not warranted on this ground.

### ii. Causation of Damages

For the first time, Defendants now argue that there was insufficient evidence to prove Defendants caused damages attributable to Plaintiffs' misappropriation of trade secrets claim. Zheng Mot. at 9–11; GC Mot. at 4–6. Defendants contend that Dr. Zhong alone—and not any Defendant—could have been responsible for any potential damages affiliated with GC LLC

---

[2] The Court here need not determine whether Plaintiffs' trade secret would be readily ascertainable as a matter of law under Defendants' narrow interpretation of Plaintiffs' trade secret because sufficient disputed evidence was introduced for a reasonable jury to find that Plaintiffs' trade secret was broader than Defendants now suggest.

5

entering into UEC-U.S. Army contracts, in relation to which the jury likely calculated its figure for damages. *See, e.g.*, Zheng Mot. at 10. Plaintiffs oppose this argument not only because there was ample competent evidence from which a reasonably jury could have found Defendants caused Plaintiffs' damages, but also because Defendants nowhere raised this argument in their pre-verdict Rule 50(a) motion. Zheng Opp. at 9–12; GC Opp. at 3–4. Defendants respond that this causation argument was raised in their Rule 50(a) motion, because Defendants there challenged the damages methodology offered by Plaintiffs' expert Mr. Kahrs. Zheng Reply at 6.

The Court rejects Defendants' contention that they advanced this argument pre-verdict simply because they disputed Plaintiffs' expert's damages methodology. Whether an expert's methodology is sound and whether Defendants caused damages under the methodology are distinct arguments, both of which ought to have been raised. Although the Court may consider this previously unraised argument, it is limited to reviewing for plain error "and should reverse only if such plain error would result in a manifest miscarriage of justice." *Go Daddy Software*, 581 F.3d at 961 (quoting *Janes*, 279 F.3d at 888). This is not an extraordinary circumstance warranting such relief. In their oppositions, Plaintiffs cite ample competent evidence—and thus go beyond the requirement to identify "*any* evidence"—that was introduced at trial from which a jury could have reached its conclusions as to who caused the pertinent damages. Zheng Opp. at 9–12; GC Opp. at 3–4.

Thus, judgment as a matter of law is not warranted on this ground.

### iii. Plaintiffs' Damages Methodologies

Defendants challenge Plaintiffs' damages methodologies in two ways. First, Defendants argue that Plaintiffs' damages expert calculated damages based on incorrect law because he did not limit damages to revenue that "would not have been earned 'but for' the alleged misappropriation." Zheng Mot. at 11–12. In support, Defendants exclusively rely on *Ajaxo, Inc. v. E\*Trade Financial Corp.*, 115 Cal. Rptr. 3d 168 (Ct. App. 2010), for the principle that "the legally required" unjust enrichment calculation is a "but for" revenues test. *Id.*

*Ajaxo* does not support Defendants' position. In full, *Ajaxo* provides:

> To be relevant, evidence of financial investments in Everypath had to

> have some tendency in reason to prove the amount by which E*Trade had been unjustly enriched by its misappropriation of Ajaxo's trade secret. A defendant's unjust enrichment is typically measured by the defendant's profits flowing from the misappropriation. A defendant's profits often represent profits the plaintiff would otherwise have earned. Where the plaintiff's loss does not correlate directly with the misappropriator's benefit, as is the case here, the problem becomes more complex. There is no standard formula to measure it. A defendant's unjust enrichment might be calculated based upon cost savings or increased productivity resulting from use of the secret. Increased market share is another way to measure the benefit to the defendant. Recovery is not prohibited just because the benefit cannot be precisely measured. But as with any other pecuniary remedy, there must be some reasonable basis for the computation.

115 Cal. Rptr. 3d at 176–77 (internal citations omitted). Nothing in that passage dictates a "but for" standard. Nor could the Court find a single case citing *Ajaxo* to support Defendants' position. *Cf. Patriot Rail Corp. v. Sierra R.R. Co.*, No. 2:09-cv-0009-TLN-AC, 2015 WL 4662707, at *18 (E.D. Cal. Aug. 5, 2015) ("However, assuming arguendo that Sierra had not proven it would have been selected, it can prevail on its misappropriation claim under an unjust enrichment theory whether or not it proved Sierra would have won but for Patriot."). Rather, the *Ajaxo* court explained that where a plaintiff's loss does not directly track a wrongdoer's benefit, "the problem becomes more complex," and there need only be a "reasonable basis for the computation." *Id.*; *see also Unilogic, Inc. v. Burroughs Corp.*, 12 Cal. Rptr. 2d 741, 750 (Ct. App. 1992) ("In other situations, a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust. In such cases, the defendant may be under a duty to give to the plaintiff the amount by which he has been enriched. And in the case of a tortfeasor, a benefit will be presumed although the entire transaction, in fact, may not be beneficial to the tortfeasor." (internal quotations and citations omitted)).

Defendants next challenge the jury's $2,362,500 damages award for Plaintiffs' breach of employment contract claim. GC Mot. at 6–8. Plaintiffs counter that (1) Defendants did not raise this argument in their pre-verdict Rule 50(a) motion, and (2) ample competent evidence nonetheless supported the damages award. GC Opp. at 5–6. The Court agrees with Plaintiffs. To start, Defendants do not dispute that they failed to raise this argument in a Rule 50(a) motion, and thus the Court reviews the jury's finding under the deferential plain error standard. *See Go Daddy*

*Software*, 581 F.3d at 961. But this is not an extraordinary circumstance warranting a nullification of the jury's verdict. As Plaintiffs' opposition notes, the parties submitted competing evidence for this calculation of damages, with competing experts. That Defendants disagree with the jury's calculation—unsurprising given the outcome—does not mean the jury's conclusion was not based on *any* evidence whatsoever.

Because the Court rejects Defendants' challenges to the jury's damages calculations, judgment as a matter of law is not warranted on these grounds.

### iv. Defendants' Affirmative Claims

Defendants contend that they are entitled to judgment as a matter of law as to their affirmative claims for misappropriation of trade secret, civil theft, breach of contract, and breach of fiduciary duty. GC Mot. at 11–13. Defendants' claims rely on a statement by Dr. Zhong that she had work documents on a USB drive, which she at some point took home to perform after-hours work. *Id.* Defendants then argue that the "uncontradicted evidence" showed this USB drive had numerous confidential files. *Id.* Thus, in Defendants' view, they are entitled to judgment as a matter of law on their various affirmative claims.

Yet again, Defendants failed to raise any of these arguments in a pre-verdict Rule 50(a) motion. The Court thus reviews the jury's findings for plain error, but finds none here. *See Go Daddy Software*, 581 F.3d at 961. Regardless of the standard of review, as Plaintiffs note in their opposition, the jury had ample basis to find Plaintiffs were not liable on these causes of action. GC Opp. at 7–8. Among many other reasons, the jury reasonably could have found based on evidence introduced at trial that: (1) Plaintiffs were not liable for misappropriation of trade secrets because Dr. Zhong did not improperly acquire, use or disclose any trade secret material, because Dr. Zhong neither took information after her termination, nor improperly used or disclosed trade secret information, *see* Dkt. No. 357 ("Jury Instructions") at 44 (setting forth the undisputed elements for a misappropriation of trade secret claim); (2) Plaintiffs were not liable for civil theft because Dr. Zhong did not have the requisite "criminal intent," *see id.* at 64 (setting forth the undisputed elements for civil theft); (3) Plaintiffs were not liable for breach of contract because GC did not perform substantially all that was required under the contract, *see id.* at 26 (setting

8

forth the undisputed elements for breach of contract); and (4) Plaintiffs were not liable for breach of fiduciary duty because GC suffered no damages on account of any purported breach, *see id.* at 57–58 (setting forth the undisputed elements for breach of fiduciary duty).[3]

Because the Court rejects Defendants' challenges to the jury's findings on Defendants' affirmative claims, judgment as a matter of law is not warranted on these grounds.

Accordingly, Defendants' renewed motions for judgment as a matter of law are **DENIED** in their entirety.

### III. DEFENDANTS' MOTIONS FOR A NEW TRIAL[4]

#### A. Legal Standard

A court "may, on motion, grant a new trial on all or some of the issues," Fed. R. Civ. P. 59(a), "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice," *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (internal quotations omitted). Courts should not grant a new trial unless they are "left with the definite and firm conviction that a mistake has been committed." *Landes Constr. Co. v. Royal Bank of Can.*, 833 F.2d 1365, 1372 (9th Cir. 1987) (internal quotations omitted). In considering a Rule 59(a) motion, the court "is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014).

#### B. Discussion

Defendants move for a new trial on (1) Plaintiffs' misappropriation of trade secret claim; (2) Plaintiffs' breach of employment contract claim; and (3) GC's affirmative claims for

---

[3] The Court need not individually second guess every one of the jury's findings, as Defendants may wish, because Defendants failed to move for judgment as a matter of law pre-verdict. Nonetheless, the Court summarizes some of the reasons why Defendants fall far short of showing plain error. These reasons are not an exhaustive summary of the support in the record for the conclusion that the jury's findings were not plainly erroneous.

[4] Defendants move for a new trial "and remittitur" under Rule 59, but present no independent arguments for remittitur. *See* Zheng Mot. at 1, 3, 12, 21 (noting each time that Defendants seek remittitur in the alternative but presenting no separate argument); GC Mot. at 1, 3, 4, 9, 14 (same). Because the Court rejects Defendants' arguments for a new trial, the Court also rejects Defendants' claims for remittitur.

misappropriation of trade secrets, breach of contract, civil theft, and breach of fiduciary duty. Zheng Mot. at 12–21; GC Mot. at 8–13.

### i. Plaintiffs' Misappropriation of Trade Secret Claim

Defendants contend that the jury's verdict in favor of Plaintiffs' on their misappropriation of trade secret claim was contrary to the clear weight of evidence, because (1) the Li Foil Idea was publicly known and readily ascertainable; (2) there was no evidence Defendants caused the unjust enrichment damages; (3) Plaintiffs consented to GC LLC selling products made with ETI-owned technology to the U.S. Army; (4) the Li Foil Idea did not belong to Plaintiffs under the TLSA or Supplemental agreement; (5) there is no evidence Dr. Cao acquired, disclosed, or used Plaintiffs' trade secret through improper means; and (6) there was no evidence Dr. Zheng acted willfully or wantonly. Zheng Mot. at 12–21.

The Court rejects each of Defendants' arguments. First, as discussed in greater detail above, Defendants' argument that the Li Foil Idea was publicly known and readily ascertainable is based on an unduly narrow interpretation of Plaintiffs' trade secret, which the jury reasonably could have rejected. Second, as also discussed in greater detail above, Defendants' argument that there is no evidence they caused unjust enrichment damages assumes that no reasonable jury could have adopted Plaintiffs' proffered damages calculations, and the Court has rejected that assumption. Defendants raise a separate argument on this point: because the jury found Dr. Zheng was not liable for inducing GC LTD and GC ITL to breach the TLSA, it must also have determined that Dr. Zheng did not misappropriate Plaintiffs' trade secret. Zheng Mot. at 14–15. But as Plaintiffs argue in response, the jury in fact determined that Dr. Zheng misappropriated trade secrets and caused damages. Zheng Opp. at 13. It thus cannot be determined on what basis the jury found that Dr. Zheng did not induce any breach of the TLSA.

Third, Defendants' argument that Plaintiffs consented to any possible misappropriation assumes the jury agreed with Defendants that Dr. Zhong knew GC LLC was a separate entity from the other GC entities. But Dr. Zhong testified that she believed GC LLC was wholly owned by GC LTD, which the jury reasonably could have believed and thus concluded that Dr. Zhong did not knowingly consent to a separate entity using the disputed trade secret information. *See* Trial

10

Tr. Nov. 15, 2018, at 103:1–15, 119:21–121:2.

Fourth, whether the Li Foil Idea belonged to Plaintiffs under the relevant agreements was vigorously disputed at trial. The relevant language in the agreements was ambiguous about how to categorize the Li Foil Idea, including whether the idea "relate[d] to electrode technology and manufacture," in which case it would "belong to ETI." Tr. Ex. 8. Substantial testimony supported this understanding of the Li Foil Idea and thus the jury's conclusion. *See, e.g.*, Trial Tr. Nov. 19, 2018, at 25:3–27:13. Defendants also contend that Dr. Zhong could not have prevailed on the misappropriation of trade secret claim because the relevant agreement assigned intellectual property rights to ETI. Zheng Mot. at 16–17. As Plaintiffs note in opposition, however, there was ample evidence from which the jury could have reasonably determined that Dr. Zhong jointly owned the idea with ETI. Zheng Opp. at 15.

Fifth, Defendants' argument that there is no evidence Dr. Cao acquired, disclosed, or used Plaintiffs' trade secret through improper means is untrue, given that the jury heard testimony from which they could have reasonably concluded that, among other things, Dr. Cao knew Dr. Zhong claimed the relevant trade secret as her own, Dr. Cao disclosed the idea by incorporating it into GC LLC's non-provisional patent application without Dr. Zhong's consent, and Dr. Cao learned of the trade secret under circumstances giving rise to a duty to maintain secrecy or limit its use. *See* Zheng Opp. at 16–17.

Finally, the clear weight of the evidence does not absolve Dr. Zheng of Plaintiffs' claims that he acted willfully or wantonly. Although Defendants now portray this case as about a "good faith dispute," *see* Zheng Mot. at 21, a reasonable jury could have concluded otherwise. As but one example, Belle Yu testified that Dr. Zheng told her not to inform Dr. Zhong about what was characterized as a secret GC LLC bank account, from which a patent lawyer was paid. Trial. Tr. Nov. 21, 2018 at 67:1–69:8. From that alone, a reasonable jury could have concluded that Dr. Zheng acted willfully or wantonly.

For these reasons, the Court rejects Defendants argument that the jury's verdict in favor of Plaintiffs on their misappropriation of trade secret claim was contrary to the clear weight of the evidence

### ii. Plaintiffs' Breach of Employment Contract Claim

Defendants' basis for moving for a new trial on Plaintiffs' breach of employment contract claim is entirely derivative of their arguments for judgment as a matter of law on this claim. GC Mot. at 10–11. As detailed above, however, the Court finds that the jury was presented with reasonable competing evidence on the proper calculation of damages stemming from Plaintiffs' breach of employment contract claim. That Defendants disagree with the outcome does not leave the Court with a firm conviction that a mistake was made. *Landes Constr. Co.*, 833 F.2d at 1372. To the contrary, the Court finds that the jury appears to have carefully weighed the competing evidence presented and reached a reasonable conclusion.

### iii. Defendants' Affirmative Claims

Defendants argue that they are also entitled to a new trial on their claims for misappropriation of trade secret, civil theft, breach of contract, and breach of fiduciary duty. GC Mot. at 11–13. Defendants' arguments in support of a new trial, however, are entirely duplicative of their arguments for judgment as a matter of law. *Id.* For the reasons noted above, the Court is not left with a firm conviction that the jury made a mistake by absolving Plaintiffs of liability on any of Defendants' affirmative claims. The Court instead finds that the jury had ample evidence from which it could have reached its conclusions.

## IV. PLAINTIFFS' MOTION FOR EXEMPLARY DAMAGES AND ATTORNEYS' FEES AND COSTS

Also before the Court is Plaintiffs' motion for exemplary damages, attorneys' fees and costs. The jury found that Dr. Zheng—but no other Defendant—willfully and maliciously misappropriated Plaintiffs' trade secrets. *See* Dkt. No. 372 at 5. Plaintiffs now seek exemplary damages against Dr. Zheng equal to "double the unjust enrichment damages award" from the misappropriation of trade secrets award of $247,474. Pls. Mot. at 1, 4. Plaintiffs further seek attorneys' fees and costs in the amount of $1,587,289.50. *Id.* at 10. Dr. Zheng opposes the request for damages, fees, and costs in its entirety.[5]

---

[5] Dr. Zheng also argues this Court has no personal jurisdiction. Pls. Opp. at 15–16. Even if the present motion were the proper forum to contest personal jurisdiction, this Court previously found

12

### A. Exemplary Damages

The California Uniform Trade Secrets Act ("CUTSA") provides that a court "may award exemplary damages in an amount not exceeding twice" the compensatory award where there is willful and malicious misappropriation. Cal. Civ. Code § 3426.3(c). Although a jury must determine whether there was willful and malicious misappropriation, "the Court has the discretion to award exemplary damages." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 399 F. Supp. 2d 1064, 1078 (N.D. Cal. 2005). In determining whether and to what extent exemplary damages under CUTSA are warranted, courts generally consider three factors: "(1) the nature of the misconduct; (2) the amount of compensatory damages; and (3) the defendant's financial condition." *Mattel, Inc. v. MGA Entm't, Inc.*, 801 F. Supp. 2d 950, 953 (C.D. Cal. 2011) (citing *Neal v. Farmers Ins. Exchange*, 582 P.2d 980 (Cal. 1978) and *Adams v. Murakami*, 813 P.2d 1348 (Cal. 1991)).[6]

#### i. Nature of the Misconduct

Courts employ many considerations in evaluating the nature of misconduct, including whether: "(1) the misconduct caused physical harm; (2) the misconduct disregarded the health or safety of others; (3) the misconduct targeted a financially vulnerable party; (4) the misconduct was repeated; and (5) the harm resulted from intentional malice, trickery, or deceit, or mere accident." *Mattel, Inc.*, 801 F. Supp. 2d at 953–54.

Plaintiffs invoke the final two *Mattel* considerations. Pls. Mot. at 2–4. As to pattern, Plaintiffs contend that evidence introduced at trial shows Dr. Zheng "instructed Defendant CAO to prepare a patent application incorporating" Dr. Zhong's trade secret, and "helped author a scientific journal article disclosing the idea and taking credit for it." Pls. Mot. at 3.

Although more than one act of misappropriation technically constitutes "repeated"

---

it could exercise personal jurisdiction over Dr. Zheng and need not repeat the supporting reasons here. *See* Dkt. No. 29.

[6] Plaintiffs cite to cases applying other states' laws for the principle that a court's discretion in awarding exemplary damages for willful and malicious misappropriation is limited and courts may only refuse to award exemplary damages if doing so would not "second guess[] the jury or contradict[] its findings." Pls. Mot. at 2. The Court is aware of no case applying CUTSA to cabin courts' discretion in this manner; rather, courts apply the three *Neal* factors. *See, e.g.*, *Mattel, Inc.*, 801 F. Supp. 2d at 953; *O2 Micro Int'l Ltd.*, 399 F. Supp. 2d at 1079.

misconduct, the Court is mindful that no evidence introduced at trial showed Dr. Zheng committed any act of misconduct toward third parties or over a prolonged period. *Cf. Mattel, Inc.*, 801 F. Supp. 2d at 954 ("For years, the company's senior management encouraged employees to use false pretenses to access competitors' private displays at international toy fairs and improperly acquire competitive information, including price lists, advertising plans, and unreleased product attributes."). Nor was evidenced introduced to show that Dr. Zheng misappropriated more than one trade secret.

As to the final consideration, one witness at trial—Belle Yu—testified that Dr. Zheng told her not to inform Dr. Zhong about a bank account, from which a check was issued to a patent attorney for filing the non-provisional patent application. Trial Tr. Nov. 21, 2018, at 67:1–19, 68:2–69:16.

Dr. Zheng argues the "nature of the misconduct" factor weighs against exemplary damages because he never intended to misappropriate trade secrets. *See, e.g.*, Pls. Opp. at 7 ("[W]hen GC LLC applied for the patent Zheng had no knowledge that Zhong or ETI claimed to own the lithium foil idea. And when Zheng later discovered that Zhong had applied to patent the lithium foil idea, Zheng had a good faith belief that neither Zhong nor ETI owned that idea."), 8 ("Zheng believed in good faith that neither Zhong nor ETI owned a trade secret . . . ."). Dr. Zheng also argues that Plaintiffs did not own a trade secret and that Dr. Zheng did not act with malice. *See, e.g., id.* at 8–9. The Court must reject these arguments, all of which are inconsistent with the jury's reasonable findings. The jury found Dr. Zheng acted willfully and maliciously in misappropriating Plaintiffs' trade secret. *See* Dkt. No. 372 at 5. The Court thus must assess the nature of Dr. Zheng's misconduct accordingly.

Although the jury found that Dr. Zheng willfully and maliciously misappropriated Plaintiffs' trade secret, the Court finds that evidence introduced at trial did not demonstrate a pattern of misconduct above and beyond what was necessary for a finding of willful and malicious misappropriation of trade secrets in this instance. The Court is mindful as well that Plaintiffs do not contend they were financially vulnerable parties. Thus, although this factor weighs in favor of exemplary damages, the Court finds that it does not justify a doubling of the compensatory award.

14

### ii. Compensatory Award

Exemplary damages must bear a reasonable relationship to the compensatory damages. "[I]n general, even an act of considerable reprehensibility will not be seen to justify a proportionally high amount of punitive damages if the actual harm suffered thereby is small." *See Neal*, 582 P.2d at 928. As a result, where a jury finds little to no compensatory damages, "awarding the maximum possible amount in exemplary damages" may be unwarranted. *See O2 Micro Int'l Ltd.*, 399 F. Supp. 2d at 1079–80. Even in the absence of compensatory damages, however, CUTSA expressly permits exemplary damages up to twice a jury award based on unjust enrichment. Cal. Civ. Code § 3426.3(a)–(c); *see also O2 Micro Int'l Ltd.*, 399 F. Supp. 2d at 1080 (awarding the maximum exemplary damages in the absence of compensatory damages where the other two factors "point[ed] strongly in the direction of awarding the maximum possible amount").

Here, the jury awarded Plaintiffs $247,474 for Dr. Zheng's misappropriation of trade secrets, which no party argues is insubstantial. Plaintiffs' sole theory of damages, however, was based on unjust enrichment. Thus, the absence of compensatory damages means this factor does not point strongly in favor of—but at the same time does not preclude—exemplary damages.

### iii. Dr. Zheng's Financial Condition

Exemplary damages serve a deterrent function, such that wealthy defendants cannot "absorb [a damages] award with little or no discomfort." *Neal*, 582 P.2d at 990. "By the same token, of course, the function of punitive damages is not served by an award which, in light of the defendant's wealth and the gravity of the particular act, exceeds the level necessary to properly punish and deter." *Id.*; *Adams*, 813 P.2d at 112 (noting that the purpose of punitive damages "is to deter, not to destroy."). Thus, even where an award appears warranted under the first two *Neal* factors, exemplary damages may "be excessive in light of the defendant's financial condition." *Adams*, 816 P.2d at 114. And a court must not speculate as to a wrongdoer's financial condition. Rather, Plaintiffs have the burden to produce adequate evidence of a defendant's financial condition. *Id.* at 119.

What constitutes adequate evidence of a party's financial condition is not well defined.

*See id.* at 116 n.7 (declining to find that "a single standard is appropriate in all cases"). Courts generally rely on the Defendant's net worth. *See Mattel, Inc.*, 801 F. Supp. 2d at 955–56; *O2 Micro Int'l Ltd.*, 399 F. Supp. 2d at 1079 n.5 (relying on evidence of net worth, as measured through assets and liabilities disclosed to federal regulators); *see also Rufo v. Simpson*, 103 Cal. Rptr. 2d 492 at 526 ("[A]lthough net worth is the most common measure of wealth used in assessing punitive damages, it is not the exclusive measure."). Evidence of profits alone, without consideration of a defendant's liabilities, is ordinarily inappropriate. *See Robert L. Cloud & Assocs., Inc. v. Mikesell*, 82 Cal. Rptr. 2d 143, 149 (Ct. App. 1999) ("Likewise, evidence of the profits wrongfully gained by the defendant is inadequate as it gives only the assets without the liabilities."); *Kenly v. Ukegawa*, 19 Cal. Rptr. 2d 771, 776 (Ct. App. 1993) ("An award based solely on the alleged "profit" gained by the defendant, in the absence of evidence of net worth, raises the potential of its crippling or destroying the defendant, focusing as it does solely on the assets side of the balance sheet without examining the liabilities side of the balance sheet. Without evidence of the entire financial picture, an award based on "profit" could leave a defendant devoid of assets with which to pay his other liabilities.").

Plaintiffs here have not carried their burden of adequately proving Dr. Zheng's financial condition such that this Court has the required confidence that it could award exemplary damages without economically destroying Dr. Zheng. *See Adams*, 813 P.2d at 112. As evidence of Dr. Zheng's financial condition, Plaintiffs only point to $247,474 in purported profits relating to "the Li Foil Idea," and GC LTD's purported net worth of $5,215,000. Pls. Mot. 4–5. But the jury awarded Plaintiffs the $247,474 figure as damages, meaning that amount is no longer Dr. Zheng's in any practical sense, and thus is irrelevant to this calculus. *See Kenly*, 19 Cal. Rptr. 2d at 776. As to GC LTD's purported net worth, Plaintiffs failed to consider how the jury's award of $2,362,500 in damages against GC LTD for breach of Dr. Zhong's employment contract will diminish GC LTD's value. Plaintiffs also present no evidence as to Dr. Zheng's ownership interest in whatever is left of GC LTD, or as to what other liabilities Dr. Zheng may have. Without this evidence—which Plaintiffs had the burden of setting forth in their motion for exemplary damages—this Court finds that it cannot adequately determine Dr. Zheng's financial

16

condition.

The Court thus **DENIES** Plaintiffs request for exemplary damages.

### B. Attorneys' Fees and Costs

Under CUTSA, "the court may award reasonable attorney's fees and costs to the prevailing party" where "willful and malicious misappropriation exists." Cal. Civ. Code § 3426.4. Attorneys' fees and costs are not mandatory, even where the jury finds willful and malicious misappropriation. *Id.*; *see also O2 Micro Int'l Ltd.*, 399 F. Supp. 2d at 1080. Rather, the decision of whether and to what extent to award attorneys' fees in a California trade secret case is committed to the trial court's discretion. *See Altavion, Inc. v. Konica Minolta Sys. Laboratory, Inc.*, 171 Cal. Rptr. 3d 714, 750–51 (App. Ct. 2014). In this inquiry, courts are mindful of CUTSA's overarching goal of deterrence. *See O2 Micro Int'l Ltd.*, 399 F. Supp. 2d at 1080.

The Court concludes that, in its discretion and in keeping with CUTSA's overarching goal, attorneys' fees and costs are not warranted here.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motions for renewed judgment as a matter of law and for new trial and remittitur, and **DENIES** Plaintiffs' motion for exemplary damages, attorneys' fees and costs. The judgment entered on January 30, 2019 remains in full effect.

**IT IS SO ORDERED.**

Dated: 4/17/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge